**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **JANE DOE 1** | ) | |
| | ) | |
| **and** | ) | **Case No.** __7:22CV00163__ |
| | ) | |
| **JANE DOE 2,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROANOKE COUNTY SCHOOL** | ) | |
| **BOARD,** | ) | |
| | ) | |
| **Serve: David M. Linden** | ) | |
| **5937 Cove Road** | ) | |
| **Roanoke, VA 24019** | ) | |
| | ) | |
| **DR. DANIEL LYONS,** | ) | |
| | ) | |
| **Serve: 170 District Court** | ) | |
| **Lexington, VA 24450** | ) | |
| | ) | |
| **DOMINICK MCKEE,** | ) | |
| | ) | |
| **Serve: 495 Tomahawk Drive** | ) | |
| **Christiansburg, VA 24073** | ) | |
| | ) | |
| **JASON BREEDING,** | ) | |
| | ) | |
| **Serve: 2 Evergreen Tree Drive** | ) | |
| **Lexington, VA 24450** | ) | |
| | ) | |
| **JILL GREEN,** | ) | |
| | ) | |
| **Serve: Northside High School** | ) | |
| **6758 Northside High** | ) | |
| **School Road** | ) | |
| **Roanoke, VA 24019** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1

**CHRISTOPHER MORRIS,** )
)
 **Serve: Northside High School** )
  **6758 Northside High** )
  **School Road** )
  **Roanoke, VA 24019** )
)
**LAURIE MCCRACKEN,** )
)
 **Serve: 7926 Sequoia Drive** )
  **Roanoke, VA 24019** )
)
**and** )
)
**LORSTAN ALLEN,** )
)
 **Serve: 725 Old Vinton Mill Rd** )
  **Roanoke, VA 24012** )
)
 **Defendants.** )

## COMPLAINT

COME NOW the Plaintiffs, Jane Does 1 and 2,[1] and bring this action to redress the Defendants' deprivation of their rights under Title IX, 29 U.S.C. § 1681(a), and the Civil Rights Act of 1964, 42 U.S.C. § 1983. Plaintiffs also bring claims under state law for gross negligence, battery, assault, and intentional infliction of emotional distress. These claims are premised on the sexual harassment, grooming, and abuse which Plaintiffs endured while they were students at Northside High School ("Northside") in Roanoke, Virginia. Defendant Lorstan Allen, an employee of Northside, cultivated connections with female students, including Plaintiffs, which were designed to groom them for sexual abuse. Defendants Roanoke County School Board and Defendants Dr. Dan Lyons, Dominick McKee, Jason Breeding, Jill Green, Christopher Morris,

---

[1]  Due to the nature of the allegations in this lawsuit, Jane Does 1 and 2 are proceeding under a pseudonym to protect their privacy. Defendants will not be prejudiced by permitting Plaintiffs to proceed anonymously because Defendants have knowledge of the actual identities of Jane Does 1 and 2. A separate motion to proceed under a pseudonym will be filed with this Complaint.

and Laurie McCracken, all Northside administrators at various relevant times, were aware of Defendant Allen's actions, yet failed to stop and prevent his sexual harassment, grooming, abuse, assault, and battery of female students at Northside, including the Plaintiffs. Plaintiffs seek compensatory and punitive damages, attorneys' fees, and costs. As for their Complaint against the Defendants, Plaintiffs state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and Local Rule 2(b) as the acts and omissions complained of occurred in Roanoke, Virginia, which is part of the Roanoke Division in the Western District of Virginia.

## PARTIES

3.      Plaintiff Jane Doe 1 is a resident of Roanoke County, Virginia. Jane Doe 1 was a student at Northside from August 2015 through May 2019.

4.      Plaintiff Jane Doe 2 is a resident of Roanoke County, Virginia. Jane Doe 2 was a student at Northside from August 2017 through May 2021.

5.      Defendant Roanoke County School Board ("School Board") is an entity authorized by Virginia law and pursuant to Virginia Code § 22.1-28 is charged with the operation of the public schools in Roanoke County, Virginia.

6.      Defendant Dr. Daniel Lyons ("Lyons") is a resident of Roanoke County, Virginia, and was the Interim Principal of Northside, a public high school in Roanoke County, from February 19, 2016, to June 30, 2016. Defendant Lyons was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his

employment with the Defendant School Board.

7.      Defendant Dominick McKee ("McKee") is a resident of Roanoke County, Virginia, and was the Principal of Northside, a public high school in Roanoke County, from July 1, 2016, to June 30, 2019. Defendant Lyons was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

8.      Defendant Jason Breeding ("Breeding") is a resident of Roanoke County, Virginia, and was the Principal of Northside, a public high school in Roanoke County, from July 1, 2019, to June 30, 2020. Defendant Breeding was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

9.      Defendant Jill Green ("Green") is a resident of Roanoke County, Virginia, and is the current Principal of Northside, a public high school in Roanoke County, having begun that position on July 1, 2020. Defendant Green is and was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of her employment with the Defendant School Board.

10.     Defendant Christopher Morris ("Morris") is a resident of Roanoke County, Virginia, and is an Assistant Principal of Northside, a public high school in Roanoke County, having begun that position on July 1, 2017. Defendant Morris is and was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

11.     Defendant Laurie McCracken ("McCracken") is a resident of Roanoke County, Virginia, and is an Assistant Principal of Northside, a public high school in Roanoke County,

having begun that position on July 1, 2016. Defendant McCracken is and was employed by the

Roanoke County School Board, and was, at all relevant times, acting within the course and scope

of his employment with the Defendant School Board.

12.     Defendants Lyons, McKee, Breeding, Green, Morris, and McCracken are at times

herein referred to collectively as "Defendants School Administrators." Any and all allegations

pertaining to Defendants School Administrators are intended to and shall be construed as

alleging the same facts against Defendants Lyons, McKee, Breeding, Green, Morris, and

McCracken as if alleged against any of them individually.

13.     Defendant Lorstan Allen ("Allen") is a resident of Roanoke County, Virginia, and

was, at all relevant times, an employee of the Roanoke County School Board. Mr. Allen was

employed as the IT Specialist, the Boys' Soccer Coach, and the Boys' Wrestling Coach at

Northside during the time that Jane Does 1 and 2 were students at Northside. At all relevant

times, Defendant Allen was acting within the scope and course of his employment with the

Defendant School Board.

14.     At all times material to the complaint, all Defendants were acting under color of

the statutes and ordinances of the Commonwealth of Virginia and County of Roanoke, and their

actions constitute the official policy, practice, or custom of the Roanoke County School Board.

15.     All of the actions, omissions, and conduct complained of were undertaken by the

Defendants under color of state law.

16.     Plaintiffs have been, and continue to be, adversely affected by the actions of

Defendants.

## STATEMENT OF FACTS

17.     Plaintiff Jane Doe 1 was a student at Northside in Roanoke County, Virginia,

from August 2015 through May 2019.

18.     Plaintiff Jane Doe 2 was a student at Northside in Roanoke County, Virginia, from August 2017 through May 2021.

19.     Defendant Lorstan Allen was employed as the IT Specialist at Northside and was also the Boys' Soccer Coach and the Boys' Wrestling Coach. As the IT Specialist, Defendant Allen had a private office, as well as the ability to call students out of class to come to his office at any time during the school day.

20.     Defendant Allen regularly used his position as IT Specialist to call female students out of class to come to his office. He encouraged female students, including Plaintiffs, to come to his office to see him during their study breaks, lunch breaks, and any free time the female students had while they were on school grounds. He would offer them rides home and to soccer fields after school. He would also ask for their phone number and social media information, including Snapchat, Facebook, and Instagram, and ask to be friends on such social media. Defendant Allen's efforts to cultivate connections with female students were designed to "groom" them for sexual abuse. These interactions with female students, including Plaintiffs, often occurred in Defendant Allen's office at Northside.

21.     As defined by the United States Department of Justice Center for Sex Offender Management: "Grooming behavior" is "the process of manipulation often utilized by child molesters, intended to reduce a victim's or potential victim's resistance to sexual abuse. Typical grooming activities include gaining the child's trust or gradually escalating boundary violations of the child's body in order to desensitize the victim to further abuse."

22.      Defendants School Administrators, as well as teachers, coaches, and other staff at Northside, were aware that Defendant Allen developed inappropriate relationships with female

students enrolled at Northside, including Jane Does 1 and 2, and spent inordinate time with them at school and beyond school grounds.

23.     Plaintiffs were victims of Defendant Allen's predatory behavior; he developed friendships with them by calling them out of class, encouraged them to spend time in his office with the door closed, shared meals in his office with the Plaintiffs, and engaged in lengthy phone calls with the Plaintiffs on evenings and weekends. Defendant Allen also saw students, including Plaintiffs, outside of class and took them out for meals weekends. He used these encounters to groom them and reduce their resistance to sexual abuse. Eventually, Defendant Allen inappropriately touched the Plaintiffs and subjected them to sexual harassment and abuse.

24.     Plaintiff Jane Doe 1 met Defendant Allen during her freshman year at Northside when she picked up her laptop from the library at laptop pick-up that fall.

25.     During the second semester of her freshman year, at Defendant Allen's suggestion, Jane Doe 1 kept her sports bag needed for after-school sports in Defendant Allen's office. She stopped in his office for snacks and began eating her lunch in Defendant Allen's office.

26.     During Jane Doe 1's sophomore year, Defendant Allen gave her his phone number, social media information (such as Snapchat and Instagram), and offered to give Jane Doe 1 rides to soccer practice after school. Defendant Allen and Jane Doe 1 ate breakfast and lunch together in his office. During these encounters, at Defendant Allen's insistence, the solid wood door was closed, and officials at Northside, including Defendants School Administrators, allowed them to remain closed, preventing passersby from observing what Defendant Allen and Jane Doe 1 were doing in his office.

27.     Defendant Allen intensified his grooming efforts with Jane Doe 1 in her

sophomore year. He confided details of his personal life to her. He insisted that Jane Doe 1 share details of her personal life with him.

28.     Defendant Allen offered to help Jane Doe 1 with her math homework during her study halls. Defendants School Administrators, as well as teachers, coaches, and other staff at Northside knew that Jane Doe 1 was spending every study hall in Defendant Allen's office with the door closed. Students, teachers, coaches, and other staff at Northside referred to Jane Doe 1 as Defendant Allen's assistant, because she spent so much time with Defendant Allen. In a typical day, Jane Doe 1 would attend her morning classes, go to study hall and lunch (back to back) in Defendant Allen's office, back to classes, back to Defendant Allen's office, and then to her sports practice.

29.     When Jane Doe 1 started dating, Defendant Allen insisted that Jane Doe 1 provide him with specific details about the relationships.

30.     Defendant Allen began calling her in the evening and on weekends at the end of her sophomore year. Initially, they talked about soccer, soccer practice, and soccer games, but then the calls became more personal.

31.     Beginning in the second semester of her sophomore year, when Jane Doe 1 met her male friends outside of school, Defendant Allen became extremely jealous and began inappropriately talking about sex with Jane Doe 1. Such topics included sexual acts between Defendant Allen and other teachers, teachers whom he found sexually attractive, Defendant Allen's dreams and fantasies regarding teachers whom he found sexually attractive, and other inappropriate things of that nature.

32.     Defendant Allen continued his phone calls with Jane Doe 1 throughout her sophomore and junior years. In the spring of Jane Doe 1's junior year, Defendant Allen shifted

the topics of these calls to Jane Done 1 herself. These were very long phone calls, with topics ranging from school, boys, relationships, personal issues, and intimate information. Jane Doe 1 would try to end such calls around 11:00 p.m.

33.    Defendant Allen regularly messaged Jane Doe 1 via Facebook, as well.

34.    Defendant Allen would use his authority to get Jane Doe 1 out of class so that she would come to his office. However, if she did not come to his office when he wanted her to, he would then abuse his power as IT Specialist to remotely control Jane Doe 1's computer, causing the computer to malfunction, so that she would have to go see him, since he was the IT Specialist. As the IT Specialist, he had the ability to access her computer, and he used this ability to force Jane Doe 1 to come to his private office where he continued to groom her for sexual abuse. If Defendant Allen was unable to remotely access Jane Doe 1's computer, he would call the classroom Jane Doe 1 was in and request a hall pass for Jane Doe 1, claiming it was for an IT issue. Defendant Allen would become angry if Jane Doe 1 refused to come to his office when he requested that she do so.

35.    Defendant Allen and Jane Doe 1 exchanged Christmas and birthday gifts during her sophomore and junior years.

36.    Defendant Allen continued to engage in grooming behaviors during Jane Doe 1's sophomore and junior years, and escalated the boundary violations of Jane Doe 1's body in order to desensitize Jane Doe 1. In her sophomore year, Defendant Allen would hold Jane Doe 1 with very tight hugs, and in her junior year, Defendant Allen began to touch her inappropriately, including her breasts and buttocks. He whispered in her ear and tickled her so that she fell off the chair and onto the floor. He pinned her against the wall and continued to touch and tickle her—to the point that Jane Doe 1 could not move with Defendant Allen right up against her body. He

9

regularly pushed himself against her breasts, groin, and private body parts so that she could not move. He kissed her against her wishes. All the while, the solid wood office door was closed, which, out of all the faculty at Northside, was regularly done only by Coach Allen. Jane Doe 1 was not comfortable with any of these behaviors and told Defendant Allen that these behaviors made her uncomfortable and to stop on at least three occasions. Each time, Defendant Allen temporarily stopped—though he continued to inappropriately hug her—but resumed his sexually abusive behaviors thereafter. Jane Doe 1 did not acquiesce in the behaviors, but given her age and the power disparity between them, did not know what to do to stop Defendant Allen's abusive actions. Defendant Allen was a popular teacher and a trusted adult at Northside, and it was clear to Jane Doe 1 that the school had not done and would not do anything about the situation. Defendant Allen had worked for two years to groom Jane Doe 1 and gain her trust; he had effectively desensitized her to his sexual abuse by her junior year in high school.

37.    During Jane Doe 1's junior year, Defendant Allen became more aggressive with touching and saying things of a sexual nature to Jane Doe 1. Defendant Allen repeatedly told Jane Doe 1 that he could not fully hug her because he had an erection. This did not stop Defendant Allen from grabbing Jane Doe 1 and pressing his body, with his erection, against her.

38.    Defendant Allen then became more aggressive in his unwanted touching of Jane Doe 1. He grabbed her buttocks and breasts. She did not want him to do so. These touchings were unwelcome. He would hold her tight, pressing himself against her breasts, groin and private areas, putting his head on her shoulder.

39.    Defendant Allen tried to convince Jane Doe 1 to play college soccer. He insisted on having private practices with her on the weekends and after school hours to train her for college soccer.

10

40.     Defendant Allen met Jane Doe 1 outside of school for soccer practice and games. After practice and games, he would sit in her car for hours, and refused to leave. Defendant Allen would instruct her to drive to the church parking lot so that nobody would see him with a female student. Jane Doe 1 wanted to leave and go home, but he would not get out of the car.

41.     Initially, Defendant Allen did not touch her in the car. However, his behaviors quickly escalated, and he began touching her thigh, groin, and hair. These touchings were unwelcome and unwanted.

42.     In one instance during Jane Done 1's junior year, Defendant Allen picked Jane Doe 1 up to go to the park for private soccer practice. Defendant Allen had Jane Doe 1 performing soccer drills, and if she made an error, she would have to do exercises as punishment. At one point during the practice session, Jane Doe 1 messed up and Defendant Allen required Jane Doe 1 to do five "happy stars." Jane Doe 1 did not like this type of exercise, and pleaded with Defendant Allen to not make her do it. Defendant Allen witnesses Jane Doe 1 looking at a group of teenage boys walking by, and then said that Jane Doe 1 could give him a blow job instead.

43.     Jane Doe 1 was horrified by this suggestion from Defendant Allen and attempted to avoid him after that time. Jane Doe 1 tried to pull back from Defendant Allen and avoid going to his office during the second half of her junior year, because at that point Jane Doe 1 realized that his sexually abusive behavior would never stop and, indeed, had only worsened. This was difficult, however, as Defendant Allen continued pulling her out of class.

44.     In 2017, during Jane Doe 1's junior year (which was Jane Doe 2's freshman year), while investigating an unrelated incident, Northside's resource officer observed on surveillance footage that Jane Doe 1 had been in Defendant Allen's office for more than two hours with the

11

door closed. At that point, Assistant Principal Laurie McCracken met with Defendant Allen about these unacceptable and predatory behaviors. However, no action was taken except to install a swinging half-door in his office, separating the entrance of the office from the area behind the table/counters, where Defendant Allen sat, and to instruct Defendant Allen to keep the door open when students were in his office. Assistant Principal Laurie McCracken and other administrators attempted to create a policy that students could not cross this "line" in Defendant Allen's office, *i.e.*, past the swinging half-door.

45.     However, no Northside employees, including Defendants School Administrators, teachers, coaches, and other staff, ever enforced this policy, including when Jane Does 1 and 2 were in Defendant Allen's office. Indeed, there was not even any legitimate enforcement mechanism, as the "policy" was to be enforced by Defendant Allen himself.  Defendants School Administrators, coaches, teachers, and other staff were aware that Defendant Allen continued to shut his door and visited behind closed doors with Jane Does 1 and 2. Nevertheless, no further action was taken by Defendants School Administrators, coaches, teachers, or other staff with this knowledge.

46.     Despite these policies having no effect, Defendant Allen was furious and violently angry about these policies. He was particularly furious after he left the meeting described in paragraph 44 and he went on fits of rage, punching multiple items in the back part of his office (including soccer bags) and picking up his tools he used to fix computers and threw them at the wall; Jane Doe 1 was in the room during this violent outburst, and Jane Doe 2 later learned of it from Defendant Allen when he told her that his fists hurt as a result. Defendant Allen told Jane Does 1 and 2 that he felt the school was "targeting" him and that he hated Assistant Principal McCracken in particular; he used profanities towards her and even wished that she would have

been fired.

47.     During Jane Doe 1's senior year, and Jane Doe 2's sophomore year, Defendant Allen continued to entertain female students, including Jane Does 1 and 2, in his office with the door closed, and Defendants School Administrators, teachers, coaches and other staff made no attempt to assure the safety of Jane Does 1 and 2, and other female students. On numerous occasions, the School Resource Officer found Defendant Allen with Jane Doe 1or Jane Doe 2 in his office when the resource officer was closing up the school. The Resource Officer did nothing to assure that Jane Does 1 and 2 were safe.

48.     Jane Doe 2 was similarly subjected to sexual harassment, grooming, abuse, and unwanted touching by Defendant Allen.

49.     As with Jane Doe 1, Defendant Allen started Jane Doe 2's grooming process in her freshman year, with breakfast and other meals in his office. Defendant Allen gave her rides, helped Jane Doe 2 with math, and initiated very personal conversations. After Jane Doe 1 graduated from Northside at the end of the 2019 school year, the grooming of Jane Doe 2 by Defendant Allen escalated into sexual harassment, abuse, and unwanted touching, worsening in the summer of 2019, at the beginning of Jane Doe 2's junior year.

50.     Defendant Allen would frequently hug Jane Doe 2 for prolonged periods of time. Defendant Allen refused to let go during the hugs, pressing his body against Jane Doe 2's breasts, groin, and private areas. Jane Doe 2 could feel Defendant Allen's erect penis during these interactions.

51.     As he did with Jane Doe 1, Defendant Allen pulled Jane Doe 2's class schedule and called her out of class. Defendant Allen called Jane Doe 2's teachers and said he needed to see Jane Doe 2. None of the teachers questioned these requests or prevented Jane Doe 2 from

leaving class, study hall, or yearbook to be alone with Defendant Allen in his office.

52.     Defendant Allen commented on Jane Doe 2's clothes when they were alone in his office, specifically remarking on her shirts and jeans as being tight and making other inappropriate comments regarding her appearance. He even asked her to send him pictures of her in her underwear and in a bikini in 2019 and 2020.

53.     Defendant Allen touched Jane Doe 2's hands and hair against her will. He played with the hairbands that Jane Doe 2 kept on her wrists and insisted that Jane Doe 2 give him one of her hairbands so he could have something of hers.

54.     Defendant Allen gave Jane Doe 2 rides home. Sometimes they would go out to eat. Defendant Allen would put his hand on Jane Doe 2's thigh, starting on the outside, then moving his hand to the inside of her leg.

55.     Defendant Allen questioned Jane Doe 2 about her sex life. He talked about female students and teachers with whom he wanted to have sex.

56.     As with Jane Doe 1, Defendant Allen would give Jane Doe 2 presents, such as hoodies, stuffed animals, and gift cards.

57.     Defendant Allen would make comments on Jane Doe 2's body, such as calling her "cute," "sexy," "hot," and "curvy."

58.     Defendant Allen would get angry with Jane Doe 2 if she mentioned a boy, and stop talking to Jane Doe 2 that day, requiring Jane Doe 2 to apologize.

59.      Defendant Allen said he dreamed about and wanted to kiss Jane Doe 2, and also discussed other sexual things he wanted to do with her; for instance, Defendant Allen said that he "wanted to tie her hands and feet to a bed, spread her legs and have sex with her," or words to similar effect, and talk about the positions he would want Jane Doe 2 in.

14

60.     Defendant Allen would also compare Jane Doe 2 to her friends in a sexual manner; for instance, he would state that one friend would give the best oral sex, another was the most sexual, while Jane Doe 2 would be "flexible and have a lot of sexual stamina."

61.     Defendant Allen would tell Jane Doe 2 that he was aroused, and then hug her, pressing his erect penis into her groin and private areas.

62.     Defendant Allen would tell Jane Doe 2 that he had sexual feelings for her but threatened her by saying that if she disclosed his comments, he would get into trouble, be mad at her, and their "friendship" would be ruined.

63.     As he did with Jane Doe 1, Defendant Allen communicated regularly with Jane Doe 2 after school hours and on the weekends. He communicated via text messages, cell phone calls, and Snapchat, using the username "beehumbled." The calls were long, over an hour and a half at times, and Defendant Allen said raunchy, suggestive, and sexually explicit things to Jane Doe 2. In 2019 alone, Defendant Allen spoke with Jane Doe 2 over fifty times over the phone, totaling 1,308 minutes of talking time.

64.     Defendant Allen had saved Jane Doe 2's contact information in his phone as "Boooo," which is common shorthand for one's girlfriend or boyfriend, suggesting that Defendant Allen viewed Jane Doe 2 in an intimate manner.

65.     Defendant Allen's stalking and abusive behaviors became so extreme that Jane Doe 2 told her parents about them in the fall of 2020, her senior year. At that time, Jane Doe 2 had made efforts to try and cut Defendant Allen out of her life. Defendant Allen was very angry, and, just as he did with Jane Doe 1, continually accessed Jane Doe 2's computer, abusing his power as IT Specialist, to intentionally cause a malfunction so that Jane Doe 2 would be forced to come to his office for computer repair.

15

66.     At or about this same time, Jane Doe 2 unfriended Defendant Allen on Snapchat. Defendant Allen responded by calling Jane Doe 2 into his office and warning her that if she discontinued this "friendship," he would not be her "friend" anymore, or help her with her computer, or give her rides.

67.     In the midst of the COVID-19 epidemic, Jane Doe 2 feared participating in any virtual school classes, as she was worried that Defendant Allen would interfere and contact her that way. On multiple occasions, Defendant Allen called Jane Doe 2 and told her what was going on in her Zoom meetings, indicating he was observing them and her.

68.     After Jane Doe 2 told her parents of Defendant Allen's abusive, harassing, and grooming behaviors in the Fall of 2020, Plaintiffs' father met with Assistant Principal Christopher Morris in November 2020 to address the issue. Plaintiffs' father informed Assistant Principal Morris of Defendant Allen's abusive, harassing, and grooming behaviors towards Jane Doe 2, including but not limited to comments regarding Jane Doe 2's body and his taking control of her school-issued laptop computer to inappropriately contact and stalk her.

69.     Assistant Principal Morris seemed concerned and offered to help Jane Doe 2 with her computer, but, in fact, Assistant Principal Morris took no action in response to the information provided to him by the Plaintiffs' father. At the end of Jane Doe 2's senior year, when Jane Doe 2 went in to return her laptop, Assistant Principal Morris stated he did not even remember his conversation with Jane Doe 2 and her father.

70.     After meeting Assistant Principal Morris, Principal Jill Green called Plaintiffs' father and told Plaintiffs' father not to worry about Defendant Allen, implying that Northside would finally take action against Defendant Allen. But, just like Assistant Principal Morris, Principal Green took no action in response to the information provided by the Plaintiffs' father.

16

71.     Furthermore, Defendants School Administrators, teachers, coaches, and other staff were aware of Defendant Allen's sexual harassment and abuse of female students prior to the information provided by Plaintiffs' father. There were unmistakable signs that something was amiss for years, or, at the very least, since the Spring of 2016, the second semester of Jane Doe 1's freshman year.  Defendants School Administrators, teachers, coaches, and other staff were aware that Defendant Allen spent inordinate amounts of time with female students behind closed doors in his office, and that he developed inappropriate relationships with the female students. Yet, for years, nothing was done to stop Defendant Allen and prevent the sexual harassment and abuse of female students, including Jane Does 1 and 2.

72.     Defendants School Administrators made no effort to investigate, no effort to restrict Defendant Allen's one-on-one interactions with students, no effort to curtail Defendant Allen from inviting students into his office, and no effort to protect the welfare of the students entrusted to their control.

73.     All of Defendant Allen's behaviors with female students clearly and obviously constituted improper grooming behaviors, and were or should have been recognized by Defendant School Board and its employees, administrators, teachers, coaches, and staff, including but not limited to Defendants School Administrators, as improper. Nevertheless, the Defendant School Board and Defendants School Administrators took no action to effectively stop Defendant Allen and protect the female students from his abuse and harassment.

74.     Defendant School Board and Defendants School Administrators allowed Defendant Allen to have unrestricted and unsupervised access to female students at Northside, including Jane Does 1 and 2, often for long periods of time. Defendant School Board and Defendants School Administrators allowed Defendant Allen to be alone with female students,

including Plaintiffs, in his office behind closed doors, and outside of school hours.

75.     Defendant Allen's behavior was well known throughout Northside and its faculty and staff, including Defendants School Administrators.

76.     Defendants School Administrators (among other school officials) and Defendant School Board had notice that Defendant Allen was spending an inappropriate amount of time with multiple female students, including behind closed doors.

77.     Defendant School Board and Defendants School Administrators turned a blind eye to Defendant Allen's blatant sexual misconduct towards Jane Does 1 and 2 and other female students. Defendant School Board and Defendants School Administrators failed to investigate reports of Defendant Allen's inappropriate relationships with female students at Northside, failed to curtail Defendant Allen's access to female students, and failed to prevent him from secluding female students in his office.

78.     Defendant School Board and Defendants School Administrators and other school officials had knowledge of Defendant Allen's improper behavior and abuses, but failed to address them, thereby enabling Defendant Allen to continue his pattern of sexual harassment, grooming, and abuse of female students, including Plaintiffs.

79.     Defendant School Board and Defendants School Administrators made Defendant Allen's longstanding sexual abuse of female students, including Plaintiffs, possible by their lack of oversight and supervision and their failure to act upon their knowledge of his improper and/or abuse behaviors.

80.     The acts of Defendant School Board and Defendants School Administrators as set forth above were willful, wanton, malicious, and oppressive, thus entitling Plaintiffs to awards of punitive damages.

81.     As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs have suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Plaintiffs experienced in fearing going to school and being forced to interact with Defendant Allen. In addition, Jane Doe 2 has sought and received counseling related to the abuse Defendant Allen inflicted upon her, and which Defendant School Board and Defendants School Administrators allowed to happen, and consequently takes prescribed anti-depressants, including at times Prozac and Lexapro.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF TITLE IX
**(Against Defendant Roanoke County School Board)**

82.     Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

83.     Roanoke County School Board is an "educational institution" within the meaning of 20 U.S.C. § 1681 because it is a public education program which receives financial assistance from the United States federal government.

84.     Plaintiffs were students of Defendant Roanoke County School Board and belong to a protected group of female students under Title IX.

85.     Plaintiffs were subjected to sexual harassment and abuse based on their gender.

86.     Defendant Allen's sexual harassment and abuse of Plaintiffs was sufficiently severe and pervasive to create a hostile and abusive environment in their studies and other educational endeavors.

87.     Defendant School Board had notice of Defendant Allen's sexual misconduct

against Plaintiffs and other female students based on reports from concerned parents, school board staff, the School Resource Officer, administrators, coaches, and teachers.

88.     Despite actual notice of Defendant Allen's misconduct, Defendant School Board was deliberately indifferent to Defendant Allen's misconduct. By its actions and inactions, Defendant School Board acted with deliberate indifference toward the rights of Plaintiffs and other female students to a safe and secure education environment, thus materially impairing Plaintiffs' ability to pursue their education at Northside, in violation of the requirements of Title IX.

89.     Defendant School Board, by its actions and failures to act, created a climate whereby sexual misconduct and/or abuse was tolerated, thus encouraging repeated misconduct and/or abuse and proximately causing injury to the Plaintiffs.

90.     Defendant School Board, through its agents, had actual knowledge of sexual harassment and abuse Defendant Allen perpetrated against Plaintiffs and other Northside female students both on and off school property. Defendant School Board permitted Defendant Allen to spend unsupervised time in his office with female students, behind closed doors, and permitted Defendant Allen to transport female students, unchaperoned, to school activities, such as sports practices and games.

91.     Defendants School Administrators, and other School Board agents, were appropriate persons to rectify Defendant Allen's harassing, abusive, and predatory conduct.

92.     Defendant School Board, through its agents, had the authority and ability to address the discrimination, to investigate and take meaningful corrective action to end or prevent the sexual harassment and abuse, but failed to do so. Defendant School Board failed to adequately respond and displayed deliberate indifference to the discrimination and harassment

against Plaintiffs.

93.     Plaintiffs suffered repeated school employee-on-student sexual abuse and harassment, which is considered sex discrimination prohibited by Title IX. The sexual harassment and abuse of Plaintiffs by Defendant Allen was severe, pervasive, and objectively offensive, and effectively barred Plaintiffs' access to an educational opportunity and benefits.

94.     As a direct and proximate result of Defendant School Board's deliberate indifference, Plaintiffs have suffered, and will continue to suffer, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities, and other damages.

## COUNT TWO

### 42 U.S.C. SEC. 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION
### (Against All Defendants)

95.     Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

96.     The equal protection clause of the Fourteenth Amendment guarantees Plaintiffs the right to equal protection of the laws, including the right to be free from sexual harassment and abuse in an educational setting.

97.     Defendants Allen and School Board Administrators are persons, and their actions were under color of state law within the meaning of 42 U.S.C. § 1983.

98.     Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

99.     42 U.S.C. § 1983 provides a cause of action for the violation under color of law of equal protection rights protected by the Fourteenth Amendment.

100.    Plaintiffs were subjected to discriminatory treatment based on gender in violation of the equal protection clause of the Fourteenth Amendment when they were sexually harassed and abused by Defendant Allen, a male teacher, at Northside.

101.    Similarly situated male students were not subject to such harassment and abuse.

102.    Defendants denied Plaintiffs their right to equal protection of the laws when they discriminated against Plaintiffs by subjecting them to sexual harassment and abuse by Defendant Allen, a male teacher at Northside, and by responding so inadequately to their actual knowledge of the sexual abuse and harassment of Plaintiffs as to show deliberate indifference to or tacit authorization of such sexual abuse and harassment. These actions are in violation of Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

103.    Defendants unlawfully discriminated against Plaintiffs by subjecting them to sexual harassment and abuse, including when male students were not subjected to such abuse and harassment, in violation of 42 U.S.C. § 1983 and Plaintiffs' rights under the equal protection clause of the Fourteenth Amendment.

104.    Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

105.    Defendant School Board implemented a policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy

and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

106.    Defendants have acted maliciously and intentionally.

107.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

## COUNT THREE

## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

### (Against All Defendants)

108.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

109.    Defendants Allen and School Board Administrators are persons, and their actions were under color of state law within the meaning of 42 U.S.C. § 1983.

110.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

111.    Plaintiffs have a substantive due process right under the due process clause of the Fourteenth Amendment to be free from invasion of bodily integrity.

112.    42 U.S.C. § 1983 provides a cause of action for the violation under color of law of substantive due process rights protected by the due process clause of the Fourteenth Amendment.

113.    Defendants violated Plaintiffs' substantive due process right to be free from invasion of bodily integrity when Defendant Allen sexually harassed and abused Plaintiffs,

thereby invading their bodily integrity. All Defendants were aware of Defendant Allen's invasion of Plaintiffs' bodily integrity, but failed to intervene or prevent such invasion. These actions are in violation of Plaintiffs' right to be free from invasion of bodily integrity under the due process clause of the laws under the Fourteenth Amendment to the United States Constitution.

114.     Defendants violated Plaintiffs' substantive due process right to be free from invasion of bodily integrity by subjecting them to sexual harassment and abuse by Defendant Allen, and failing to intervene or prevent such invasion, in violation of 42 U.S.C. § 1983 and Plaintiffs' rights under the substantive due process clause of the Fourteenth Amendment.

115.     Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

116.     Defendant School Board implemented policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

117.     Defendants have acted maliciously and intentionally.

118.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational

opportunities and other damages.

## COUNT FOUR

### 42 U.S.C. § 1983 - FAILURE TO TRAIN

**(Against Defendant School Board and Defendants School Administrators)**

119.    Plaintiffs incorporate by reference herein the preceding paragraphs of this

Complaint.

120.    Defendants School Board Administrators are persons, and their actions were

under color of state law within the meaning of 42 U.S.C. § 1983.

121.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to

the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611

(1978).

122.    As described above, Defendant Lorstan Allen violated the Plaintiffs' rights to

equal protection of the laws and substantive due process under the Fourteenth Amendment of the

United States Constitution when he subjected the Plaintiffs to sexual harassment, grooming,

abuse, assault and battery, which is a known risk in the educational setting and constitutes a clear

violation of students' constitutional rights.

123.    At all relevant times, Defendants School Board and School Administrators were

policy makers and administrators who had a duty to train—and failed to train—administrators,

teachers, coaches, and the School Resource Officer regarding male employee sexual harassment,

grooming, and abuse of female students. Defendants School Board and School Administrators

had a duty to train—and failed to train—administrators, teachers, coaches and the School

Resource Officer in identifying, investigating, reporting, and stopping sexual harassment,

grooming and abuse of female students by male employees of Defendant School Board, like the abuse of Plaintiffs by Defendant Lorstan Allen. Defendants School Board and School Administrators failed to train teachers and employees/agents on how to spot, investigate, and address sexual harassment, grooming, abuse, and assault. The failure to do so amounted to deliberate indifference.

124.    Defendants School Board and School Administrators acted in a deliberately indifferent manner in failing to properly train and supervise their administrators, teachers, coaches, and the School Resource Officer regarding male employee sexual harassment, grooming, and abuse of female students, and failing to train their agents in identifying, investigating, reporting, and stopping sexual harassment, grooming, and abuse of female students by male employees of Defendant School Board, like the abuse of Plaintiffs by Defendant Lorstan Allen.

125.    Defendants School Board and School Administrators continued to adhere to an approach that they knew or should have known had failed to prevent tortious conduct by Defendant Allen, thus establishing their conscious disregard for the consequences of their actions, and a conscious disregard for the rights of the Plaintiffs.

126.    Defendants School Board and School Administrators sanctioned, tolerated, and ratified Defendant Allen's unconstitutional sexual discrimination and invasion of the right to bodily integrity when they became aware of Defendant Allen's unconstitutional actions, but failed to effectively intervene and stop Defendant Allen's actions.

127.    By failing to effectively discipline or reprimand Defendant Allen for his violation of Plaintiffs' constitutional rights, Defendants School Board and School Administrators approved of and/or ratified Defendant Allen's violation of Plaintiffs' constitutional rights.

128.     Defendants School Board's and School Administrators' failure to train their administrators, teachers, staff, coaches and School Resource Officer was in reckless and callous indifference to Plaintiffs' federally protected rights.

129.     As a direct and proximate result of Defendants School Board's and School Administrators' failure to train, and subsequent sanctioning, toleration, and ratification of Defendant Allen's unconstitutional conduct, Plaintiffs were sexually harassed, abused, assaulted, and battered, thereby depriving Plaintiffs of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of constitutional rights enforceable under 42 U.S.C. § 1983.

130.     Defendant School Board implemented a policy and/or custom of failing to train their administrators, teachers, staff, coaches, and School Resource Officer, as well as a policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

131.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

**COUNT FIVE**

**42 U.S.C. § 1983 – SUPERVISORY LIABILITY**

**(Against Defendant School Board and Defendants School Administrators)**

132.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

133.    Defendants School Board Administrators are persons, and their actions were under color of state law within the meaning of 42 U.S.C. § 1983.

134.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

135.    As described above, Defendant Lorstan Allen violated the Plaintiffs' rights to equal protection of the laws and substantive due process under the Fourteenth Amendment to the United States Constitution when he sexually harassed, groomed, abused, assaulted, and battered Plaintiffs.

136.    At all relevant times, Defendant School Board and Defendants School Administrators had a duty to supervise, and failed to supervise, Defendant Lorstan Allen. Defendant School Board and Defendants School Administrators are responsible for the supervision and conduct of the staff, teachers, and coaches employed at Northside. They are further responsible for ensuring that staff, teachers, and coaches do not engage in sexual harassment, grooming, abuse, assault and battery of female students. They had supervisory duties and responsibilities with respect to their subordinate Defendant Allen and were responsible for ensuring that Defendant Allen did not sexually harass, groom and abuse Plaintiffs.

137.    Defendant School Board and Defendants School Administrators were personally involved in and responsible for the sexual harassment, grooming, abuse, assault and battery experienced by Plaintiffs in that they were deliberately indifferent in supervising and training

Defendant Allen, who committed the wrongful acts described herein.

138.    Defendant School Board and Defendants School Administrators had actual knowledge, or should have had actual knowledge if they had used reasonable care and diligence, that Defendant Allen was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injuries to Plaintiffs.

139.    However, Defendant School Board's and Defendants School Administrators' response to this knowledge of the danger Defendant Allen posed to Plaintiffs and other female students was so inadequate as to show deliberate indifference to, or tacit authorization of, Defendant Allen's sexual misconduct against Plaintiffs.

140.    Defendant School Board's and Defendants School Administrators' response to this knowledge exhibited reckless and callous indifference to Plaintiffs' federally protected rights.

141.    Defendant School Board and Defendants School Administrators failed to supervise, monitor, or adequately investigate Defendant Allen's interactions with Plaintiffs and other female students. Defendant School Board and Defendants School Administrators did not monitor Defendant Allen's actions in his office or during any other school activities, failed to take effective action to curtail Defendant Allen's unrestricted and unsupervised access to Plaintiffs, and failed to adequately investigate Defendant Allen's inappropriate interactions with Plaintiffs and other female students.

142.    Defendant School Board and Defendants School Administrators acted in a deliberately indifferent manner in failing to properly supervise Defendant Allen in his interactions with Plaintiffs and other female students.

143.    Defendant School Board and Defendants School Administrators sanctioned,

29

tolerated, and ratified Defendant Allen's unconstitutional sexual discrimination and invasion of the right to bodily integrity when they became aware of, or should have become aware of, Defendant Allen's unconstitutional actions, but failed to effectively intervene and stop Defendant Allen's actions.

144.    Defendant School Board and Defendants School Administrators failed to effectively discipline or reprimand Defendant Allen for his violation of Plaintiffs' constitutional rights.

145.    Defendant School Board's and Defendants School Administrators' failure to supervise Defendant Allen was in reckless and callous indifference to Plaintiffs' federally protected rights.

146.    The gross indifference by Defendant School Board and Defendants School Administrators to the conduct of Defendant Allen, which included repeated instances of inappropriate interactions with female students, including Plaintiffs, led to the violation of Plaintiffs' constitutionally protected rights. The failure of Defendant School Board and Defendants School Administrators to take effective corrective action after they learned, or through the exercise of reasonable care of diligence should have learned, of misconduct by Defendant Allen, and the failure to properly supervise Defendant Allen, led to these violations.

147.    These actions by the Defendant School Board and Defendants School Administrators were of a malicious and intentional nature and manifested a deliberate indifference to the established constitutional rights of Plaintiffs.

148.    Defendant School Board and Defendants School Administrators acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to

the United States Constitution.

149.     As a direct and proximate result of Defendant School Board's and Defendants School Administrators' failure to properly supervise Defendant Allen, Plaintiffs were sexually harassed, groomed, abused, assaulted and battered, thereby depriving Plaintiffs of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983.

150.     Defendant School Board implemented a policy and/or custom of failing to train their administrators, teachers, staff, coaches, and School Resource Officer, as well as a policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

151.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

## COUNT SIX

## GROSS NEGLIGENCE

### (Against Defendants School Administrators)

152.     Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

31

153.    During all times material to the claims herein, these Defendants School Administrators' acts and omissions amounted to gross negligence, recklessness, and a willful and wanton disregard for the safety and wellbeing of Jane Does 1 and 2. The acts and omissions of these Defendants were taken with conscious disregard of the consequences of their conduct. The reckless, willful and wanton acts of these Defendants include, but are not limited to, those set forth in the foregoing paragraphs.

154.    As a direct and proximate result of the gross negligence, recklessness, willfulness and wantonness of the Defendants School Administrators, Jane Does 1 and 2 suffered injuries and damages, including, but not limited to anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities.

155.    Defendants School Administrators committed the grossly negligent actions and breaches of duty as described herein in the course and scope of their employment and/or agency with Defendant School Board.

156.    As a direct and proximate result of the Defendants' actions, Plaintiffs have suffered improper touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

157.    The acts of the Defendants as set forth above were wanton, malicious, oppressive, shocking, outrageous, willful, intolerable and offend generally accepted standards of decency, and as such, entitle Plaintiffs to an award of punitive damages.

## COUNT SEVEN

## ASSAULT AND BATTERY

### (Against Defendant Allen)

158.    Plaintiffs incorporate by reference herein the preceding paragraphs of this

Complaint.

159.    Defendant Allen's inappropriate and unwanted touching constitutes assault and battery in violation of Virginia's common law.

160.    Defendant Allen's actions caused harmful or offensive contact with Plaintiffs and created in their mind a reasonable apprehension of an imminent battery.

161.    Plaintiffs neither consented to, nor excused, the inappropriate touching.

162.    The inappropriate touching was not justified.

163.    As a direct and proximate result of Defendant Allen's actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

164.    At all times material hereto, Defendant Allen acted with actual malice toward Plaintiffs or with reckless disregard of the protected rights of Plaintiffs so as to support an award of punitive damages.

**COUNT EIGHT**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against Defendant Allen and Defendants School Administrators)**

165.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

166.    The following conduct by these Defendants amounted to the intentional infliction of emotional distress: (a) Plaintiffs were sexually harassed, groomed, abused, assaulted and

battered by Defendant Allen while attending Northside; and (b) Defendant School Board and School Administrators were aware, or should have been aware, of Defendant Allen's predatory behaviors, but failed to intervene, failed to stop Defendant Allen from engaging in these behaviors, failed to terminate Defendant Allen's employment, and failed to protect the Plaintiffs from Defendant Allen's actions while they were students at Northside. In addition, Defendant School Administrators implemented and continued the policy of allowing Defendant Allen to have female students, including Plaintiffs, in his office with the door closed, despite knowing or acting in reckless disregard of the substantial risk such policy imposed on female students, including Plaintiffs.

167.    Such conduct was outrageous and intolerable and offended generally accepted standards of decency and morality. These Defendants' acts and omissions caused Plaintiffs severe emotional distress, for which they seek compensatory and punitive damages.

168.    Because of these Defendants' acts and omissions, Plaintiffs have suffered severe emotional distress, including depression, insomnia, anger, fear, stress, lack of pleasure and enjoyment in activities, interference with family relationships, loss of self-esteem and self-confidence, humiliation, anxiety, impairment of educational opportunities, and other damages.

169.    In addition, Jane Doe 2 has sought and received counseling related to the abuse Defendant Allen inflicted upon her, and which Defendant School Board and Defendants School Administrators allowed to happen, and consequently takes prescribed anti-depressants, including at times Prozac and Lexapro.

170.    These Defendants' acts and omissions were intentional and amounted to extreme and outrageous conduct, causing Plaintiffs to suffer emotional distress.

171.    Because of these Defendants' acts and omissions as set forth above, Plaintiffs

have suffered and will continue to suffer anxiety, emotional distress, pain, suffering, loss of

enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

WHEREFORE, Plaintiff Jane Doe 1 and Jane Doe 2 each request judgment against the

Defendants, jointly and severally, as follows;

A. For Count One, against Defendant Roanoke County School Board, compensatory

damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

B. For Count Two:

> 1. Against Defendant Roanoke County School Board, compensatory damages in
>
> the amount of ONE MILLION DOLLARS ($1,000,000.00);
>
> 2. Against each other Defendant named, jointly and severally, compensatory
>
> damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and
>
> punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

C. For Count Three:

> 1. Against Defendant Roanoke County School Board, compensatory damages in
>
> the amount of ONE MILLION DOLLARS ($1,000,000.00);
>
> 2. Against each other Defendant named, jointly and severally, compensatory
>
> damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and
>
> punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

D. For Count Four:

> 1. Against Defendant Roanoke County School Board, compensatory damages in
>
> the amount of ONE MILLION DOLLARS ($1,000,000.00);
>
> 2. Against each other Defendant named, jointly and severally, compensatory
>
> damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and

punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

E. For Count Five:

    1. Against Defendant Roanoke County School Board, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

    2. Against each other Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

F. For Count Six, against each Defendant named compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

G. For Count Seven, against each Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

H. For Count Eight, against each Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

I. For costs and attorneys' fees; and

J. For such further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

                    Respectfully submitted,

                    JANE DOE 1 AND JANE DOE 2

                    By:    /s/John P. Fishwick, Jr.
                           Of Counsel

John P. Fishwick, Jr. (VSB #23285)

John.Fishwick@fishwickandassociates.com
Carrol M. Ching (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile

*Counsel for Plaintiffs*