## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

JANE DOE 1,                          )
                                     )
JANE DOE 2,                          )          Case No. 7:22-cv-00163
                                     )
JANE DOE 3,                          )          **JURY TRIAL DEMANDED**
                                     )
JANE DOE 4,                          )
                                     )
and                                  )
                                     )
JANE DOE 5,                          )
                                     )
     Plaintiffs,   )
                                     )
v.                                   )
                                     )
ROANOKE COUNTY SCHOOL                )
BOARD,                               )
                                     )
    Serve: David M. Linden    )
       5937 Cove Road   )
       Roanoke, VA 24019  )
                                     )
DR. DANIEL LYONS,                    )
                                     )
    Serve: 170 District Court  )
       Lexington, VA 24450  )
                                     )
DOMINICK MCKEE,                      )
                                     )
    Serve: 495 Tomahawk Drive  )
       Christiansburg, VA 24073  )
                                     )
JASON BREEDING,                      )
                                     )
    Serve: 2 Evergreen Tree Drive  )
       Lexington, VA 24450  )
                                     )
JILL GREEN,                          )
                                     )
    Serve: Northside High School  )
                                     )

1

6758 Northside High )
School Road )
Roanoke, VA 24019 )
)
**CHRISTOPHER MORRIS,** )
)
Serve: Northside High School )
6758 Northside High )
School Road )
Roanoke, VA 24019 )
)
**LAURIE MCCRACKEN,** )
)
Serve: 7926 Sequoia Drive )
Roanoke, VA 24019 )
)
**and** )
)
**LORSTAN ALLEN,** )
)
Serve: 725 Old Vinton Mill Rd )
Roanoke, VA 24012 )
)
**Defendants.** )
)
)
)

## FIRST AMENDED COMPLAINT

COME NOW the Plaintiffs, Jane Does 1, 2, 3, 4, and 5,[1] and bring this action to redress

the Defendants' deprivation of their rights under Title IX, 29 U.S.C. § 1681(a), and the Civil

Rights Act of 1964, 42 U.S.C. § 1983. Plaintiffs also bring claims under state law for gross

negligence, battery, assault, and intentional infliction of emotional distress. These claims are

premised on the sexual harassment, grooming, and abuse which Plaintiffs endured while they

---

[1]     Due to the nature of the allegations in this lawsuit, all Jane Does are proceeding under a pseudonym to protect their privacy. Defendants will not be prejudiced by permitting Plaintiffs to proceed anonymously because Defendants have knowledge of the actual identities of all Jane Does. With respect to Jane Does 1 and 2, a separate motion to proceed under a pseudonym was filed with the Complaint. With respect to Jane Does 3, 4, and 5, a separate motion to proceed under a pseudonym will be filed contemporaneously with this First Amended Complaint.

were students at Northside High School ("Northside") in Roanoke, Virginia. Defendant Lorstan Allen, an employee of Northside, exploited and cultivated connections with vulnerable female students, including Plaintiffs, which were designed to groom them for the sexual abuse Defendant Allen ultimately inflicted upon them. Defendants Roanoke County School Board and Defendants Dr. Dan Lyons, Dominick McKee, Jason Breeding, Jill Green, Christopher Morris, and Laurie McCracken, all Northside administrators at various relevant times, were aware of Defendant Allen's actions, yet failed to stop and prevent his sexual harassment, grooming, abuse, assault, and battery of female students at Northside, including the Plaintiffs. Plaintiffs seek compensatory and punitive damages, attorneys' fees, and costs. As for their First Amended Complaint against the Defendants, Plaintiffs state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and Local Rule 2(b) as the acts and omissions complained of occurred in Roanoke, Virginia, which is part of the Roanoke Division in the Western District of Virginia.

## PARTIES

3. Plaintiff Jane Doe 1 is a resident of Roanoke County, Virginia. Jane Doe 1 was a student at Northside from August 2015 through May 2019.

4. Plaintiff Jane Doe 2 is a resident of Roanoke County, Virginia. Jane Doe 2 was a student at Northside from August 2017 through May 2021.

5. Plaintiff Jane Doe 3 is a resident of Roanoke City, Virginia. Jane Doe 3 was a student at Northside from August 2015 through May 2019.

6. Plaintiff Jane Doe 4 is a resident of Roanoke City, Virginia. Jane Doe 4 was a student at Northside from August 2015 through May 2019.

7. Plaintiff Jane Doe 5 is a resident of Woodbridge, Virginia. Jane Doe 5 was a student at Northside from August 2018 to December 2019.

8. Plaintiffs join their actions together pursuant to Federal Rule of Civil Procedure 20(a), as they assert their respective rights to relief arising out of the same series of transactions or occurrences, and questions of law and fact common to all Plaintiffs will arise in this action.

9. Defendant Roanoke County School Board ("School Board") is an entity authorized by Virginia law and pursuant to Virginia Code § 22.1-28 is charged with the operation of the public schools in Roanoke County, Virginia.

10. Defendant Dr. Daniel Lyons ("Lyons") is a resident of Roanoke County, Virginia, and was the Interim Principal of Northside, a public high school in Roanoke County, from February 19, 2016, to June 30, 2016. Defendant Lyons was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

11. Defendant Dominick McKee ("McKee") is a resident of Roanoke County, Virginia, and was the Principal of Northside, a public high school in Roanoke County, from July 1, 2016, to June 30, 2019. Defendant Lyons was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

12. Defendant Jason Breeding ("Breeding") is a resident of Roanoke County, Virginia, and was the Principal of Northside, a public high school in Roanoke County, from July 1, 2019, to June 30, 2020. Defendant Breeding was employed by the Roanoke County School Board,

and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

13. Defendant Jill Green ("Green") is a resident of Roanoke County, Virginia, and is the current Principal of Northside, a public high school in Roanoke County, having begun that position on July 1, 2020. Defendant Green is and was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of her employment with the Defendant School Board.

14. Defendant Christopher Morris ("Morris") is a resident of Roanoke County, Virginia, and is an Assistant Principal of Northside, a public high school in Roanoke County, having begun that position on July 1, 2017. Defendant Morris is and was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

15. Defendant Laurie McCracken ("McCracken") is a resident of Roanoke County, Virginia, and is an Assistant Principal of Northside, a public high school in Roanoke County, having begun that position on July 1, 2016. Defendant McCracken is and was employed by the Roanoke County School Board, and was, at all relevant times, acting within the course and scope of his employment with the Defendant School Board.

16. Defendants Lyons, McKee, Breeding, Green, Morris, and McCracken are at times herein referred to collectively as "Defendants School Administrators." Any and all allegations pertaining to Defendants School Administrators are intended to and shall be construed as alleging the same facts against Defendants Lyons, McKee, Breeding, Green, Morris, and McCracken as if alleged against any of them individually.

17. Defendant Lorstan Allen ("Allen") is a resident of Roanoke County, Virginia, and was, at all

relevant times, an employee of the Roanoke County School Board. Mr. Allen was employed as the IT Specialist, the Boys' Soccer Coach, and the Boys' Wrestling Coach at Northside during the time that Jane Does 1, 2, 3, 4, and 5 were students at Northside. At all relevant times, Defendant Allen was acting within the scope and course of his employment with the Defendant School Board.

18. At all times material to the complaint, all Defendants were acting under color of the statutes and ordinances of the Commonwealth of Virginia and County of Roanoke, and their actions constitute the official policy, practice, or custom of the Roanoke County School Board.

19. All of the actions, omissions, and conduct complained of were undertaken by the Defendants under color of state law.

20. Plaintiffs have been, and continue to be, adversely affected by the actions of Defendants.

## STATEMENT OF FACTS

21. Defendant Lorstan Allen was employed as the IT Specialist at Northside and was also the Boys' Soccer Coach and the Boys' Wrestling Coach. As the IT Specialist, Defendant Allen had a private office, as well as the ability to call students out of class to come to his office at any time during the school day.

22. Defendant Allen regularly used his position as IT Specialist to call female students out of class to come to his office—by contrast, male students were rarely if ever in his office. He encouraged female students, including Plaintiffs, to come to his office to see him during their study breaks, lunch breaks, and any free time the female students had while they were on school grounds. He would offer them rides home and to soccer fields after school. He would also ask for their phone number and social media information, including Snapchat, Facebook, and Instagram, and ask to be friends on such social media. Defendant Allen's efforts to

cultivate connections with female students were designed to "groom" them for sexual abuse. These interactions with female students, including Plaintiffs, often occurred in Defendant Allen's office at Northside.

23. As defined by the United States Department of Justice Center for Sex Offender Management: "Grooming behavior" is "the process of manipulation often utilized by child molesters, intended to reduce a victim's or potential victim's resistance to sexual abuse. Typical grooming activities include gaining the child's trust or gradually escalating boundary violations of the child's body in order to desensitize the victim to further abuse."

24. Defendants School Administrators, as well as teachers, coaches, and other staff at Northside, were aware that Defendant Allen developed inappropriate relationships with female students enrolled at Northside, including Jane Does 1, 2, 3, 4, and 5, and spent an inordinate amount of time with them at school and beyond school grounds.

25. Plaintiffs were victims of Defendant Allen's predatory behavior; he developed friendships with them by calling them out of class, encouraged them to spend time in his office with the door closed, shared meals in his office with the Plaintiffs, and engaged in lengthy phone calls with the Plaintiffs on evenings and weekends. Defendant Allen also saw students, including Plaintiffs, outside of class and took them out for meals on weekends. He used these encounters to groom them and reduce their resistance to sexual abuse. Eventually, Defendant Allen inappropriately touched the Plaintiffs and subjected them to grooming, sexual harassment, and sexual abuse, as detailed for each Plaintiff below.

**Jane Doe 1**

26. Plaintiff Jane Doe 1 was a student at Northside in Roanoke County, Virginia, from August 2015 through May 2019.

27. Jane Doe 1 met Defendant Allen during her freshman year at Northside when she picked up her laptop from the library at laptop pick-up that fall.

28. During the second semester of her freshman year, at Defendant Allen's suggestion, Jane Doe 1 kept her sports bag needed for after-school sports in Defendant Allen's office. She stopped in his office for snacks and began eating her lunch in Defendant Allen's office.

29. During Jane Doe 1's sophomore year, Defendant Allen gave her his phone number, social media information (such as Snapchat and Instagram), and offered to give Jane Doe 1 rides to soccer practice after school. Defendant Allen and Jane Doe 1 ate breakfast and lunch together in his office. During these encounters, at Defendant Allen's insistence, the solid wood door was closed, and officials at Northside, including Defendants School Administrators, allowed them to remain closed, preventing passersby from observing what Defendant Allen and Jane Doe 1 were doing in his office.

30. Defendant Allen intensified his grooming efforts with Jane Doe 1 in her sophomore year. He confided details of his personal life to her. He insisted that Jane Doe 1 share details of her personal life with him.

31. Defendant Allen would say inappropriate things to Jane Doe 1 of a sexual nature, such as that he would want to date Jane Doe 1 if they were the same age.

32. Defendant Allen offered to help Jane Doe 1 with her math homework during her study halls. Defendants School Administrators, as well as teachers, coaches, and other staff at Northside knew that Jane Doe 1 was spending every study hall in Defendant Allen's office with the door closed. Students, teachers, coaches, and other staff at Northside referred to Jane Doe 1 as Defendant Allen's assistant, because she spent so much time with Defendant Allen. In a typical day, Jane Doe 1 would attend her morning classes, go to study hall and lunch (back-

to-back) in Defendant Allen's office, back to classes, back to Defendant Allen's office, and then to her sports practice.

33. When Jane Doe 1 started dating, Defendant Allen insisted that Jane Doe 1 provide him with specific details about the relationships.

34. Defendant Allen began calling her in the evening and on weekends at the end of her sophomore year. Initially, they talked about soccer, soccer practice, and soccer games, but then the calls became more personal.

35. Beginning in the second semester of her sophomore year, when Jane Doe 1 met her male friends outside of school, Defendant Allen became extremely jealous and began inappropriately talking about sex with Jane Doe 1. Such topics included sexual acts between Defendant Allen and other teachers, teachers whom he found sexually attractive, Defendant Allen's dreams and fantasies regarding teachers whom he found sexually attractive, and other inappropriate things of that nature.

36. Defendant Allen continued his phone calls with Jane Doe 1 throughout her sophomore and junior years. In the spring of Jane Doe 1's junior year, Defendant Allen shifted the topics of these calls to Jane Doe 1 herself. These were very long phone calls, with topics ranging from school, boys, relationships, personal issues, and intimate information. Jane Doe 1 would try to end such calls around 11:00 p.m.

37. Defendant Allen regularly messaged Jane Doe 1 via Facebook, as well.

38. Defendant Allen would use his authority to get Jane Doe 1 out of class so that she would come to his office. However, if she did not come to his office when he wanted her to, he would then abuse his power as IT Specialist to remotely control Jane Doe 1's computer, causing the computer to malfunction, so that she would have to go see him, since he was the

IT Specialist. As the IT Specialist, he had the ability to access her computer, and he used this ability to force Jane Doe 1 to come to his private office where he continued to groom her for sexual abuse. If Defendant Allen was unable to remotely access Jane Doe 1's computer, he would call the classroom Jane Doe 1 was in and request a hall pass for Jane Doe 1, claiming it was for an IT issue. Defendant Allen would become angry if Jane Doe 1 refused to come to his office when he requested that she do so.

39. Jane Doe 1's frequent visits to Defendant Allen's office did not go unnoticed by other Northside employees, including Defendants School Administrators. Jane Doe 1's teachers would often be confused about Jane Doe 1 being absent so much, wondering why she couldn't just drop off her laptop and why she had to be present in Defendant Allen's office all the time.

40. Defendant Allen would keep snacks in his office that he would give out only to female students such as Jane Doe 1 and would offer to bring Jane Doe 1 lunch from outside the school.

41. Defendant Allen and Jane Doe 1 exchanged Christmas and birthday gifts during her sophomore and junior years.

42. Defendant Allen continued to engage in grooming behaviors during Jane Doe 1's sophomore and junior years, and escalated the boundary violations of Jane Doe 1's body in order to desensitize Jane Doe 1. In her sophomore year, Defendant Allen would hold Jane Doe 1 with very tight hugs, and in her junior year, Defendant Allen began to touch her inappropriately, including her breasts and buttocks. He whispered in her ear and tickled her so that she fell off the chair and onto the floor. He pinned her against the wall and continued to touch and tickle her—to the point that Jane Doe 1 could not move with Defendant Allen right up against her

10

body. He regularly pushed himself against her breasts, groin, and private body parts so that she could not move. He kissed her against her wishes. All the while, the solid wood office door was closed, which, out of all the faculty at Northside, was regularly done only by Coach Allen. Jane Doe 1 was not comfortable with any of these behaviors and told Defendant Allen that these behaviors made her uncomfortable and to stop on at least three occasions. Each time, Defendant Allen temporarily stopped—though he continued to inappropriately hug her—but resumed his sexually abusive behaviors thereafter. Jane Doe 1 did not acquiesce in the behaviors, but given her age and the power disparity between them, did not know what to do to stop Defendant Allen's abusive actions. Defendant Allen was a popular teacher and a trusted adult at Northside, and it was clear to Jane Doe 1 that the school had not done and would not do anything about the situation. Defendant Allen had worked for two years to groom Jane Doe 1 and gain her trust; he had effectively desensitized her to his sexual abuse by her junior year in high school.

43. During Jane Doe 1's junior year, Defendant Allen became more aggressive with touching and saying things of a sexual nature to Jane Doe 1. Defendant Allen repeatedly told Jane Doe 1 that he could not fully hug her because he had an erection. This did not stop Defendant Allen from grabbing Jane Doe 1 and pressing his body, with his erection, against her.

44. Defendant Allen then became more aggressive in his unwanted touching of Jane Doe 1. He grabbed her buttocks and breasts. She did not want him to do so. These touchings were unwelcome. He would hold her tight, pressing himself against her breasts, groin and private areas, putting his head on her shoulder.

45. Defendant Allen tried to convince Jane Doe 1 to play college soccer. He insisted on having private practices with her on the weekends and after school hours to train her for college

soccer.

46. Defendant Allen met Jane Doe 1 outside of school for soccer practice and games. After practice and games, he would sit in her car for hours, and refused to leave. Defendant Allen would instruct her to drive to the church parking lot so that nobody would see him with a female student. Jane Doe 1 wanted to leave and go home, but he would not get out of the car.

47. Initially, Defendant Allen did not touch her in the car. However, his behaviors quickly escalated, and he began touching her thigh, groin, and hair. These touchings were unwelcome and unwanted.

48. In one instance during Jane Doe 1's junior year, Defendant Allen picked Jane Doe 1 up to go to the park for private soccer practice. Defendant Allen had Jane Doe 1 perform soccer drills, and if she made an error, she would have to do exercises as punishment. At one point during the practice session, Jane Doe 1 messed up, and Defendant Allen required Jane Doe 1 to do five "happy stars." Jane Doe 1 did not like this type of exercise and pleaded with Defendant Allen to not make her do it. Defendant Allen witnessed Jane Doe 1 looking at a group of teenage boys walking by, and then said that Jane Doe 1 could give him a blow job instead.

49. Jane Doe 1 was horrified by this suggestion from Defendant Allen and attempted to avoid him after that time. Jane Doe 1 tried to pull back from Defendant Allen and avoid going to his office during the second half of her junior year, because at that point Jane Doe 1 realized that his sexually abusive behavior would never stop and, indeed, had only worsened. This was difficult, however, as Defendant Allen continued pulling her out of class.

50. In 2017, during Jane Doe 1's junior year, while investigating an unrelated incident, Northside's resource officer observed on surveillance footage that Jane Doe 1 had been in Defendant Allen's office for more than two hours with the door closed. At that point,

Assistant Principal Laurie McCracken met with Defendant Allen about these unacceptable and predatory behaviors. However, no action was taken except to install a swinging half-door in his office, separating the entrance of the office from the area behind the table/counters, where Defendant Allen sat, and to instruct Defendant Allen to keep the door open when students were in his office. Assistant Principal Laurie McCracken and other administrators attempted to create a policy that students could not cross this "line" in Defendant Allen's office, *i.e.*, past the swinging half-door.

51. However, no Northside employees, including Defendants School Administrators, teachers, coaches, and other staff, ever enforced this policy, including when Jane Does 1, 2, 3, 4, and 5 were in Defendant Allen's office. Indeed, there was not even any legitimate enforcement mechanism, as the "policy" was to be enforced by Defendant Allen himself.  Defendants School Administrators, coaches, teachers, and other staff were aware that Defendant Allen continued to shut his door and visited behind closed doors with Jane Does 1, 2, 3, 4, and 5. Nevertheless, no further action was taken by Defendants School Administrators, coaches, teachers, or other staff with this knowledge.

52. Despite these policies having no effect, Defendant Allen was furious and violently angry about these policies. He was particularly furious after he left the meeting described in paragraph 50 and he went on fits of rage, punching multiple items in the back part of his office (including soccer bags) and picking up his tools he used to fix computers and threw them at the wall; Jane Doe 1 was in the room during this violent outburst, and Jane Doe 2 later learned of it from Defendant Allen when he told her that his fists hurt as a result. Defendant Allen told Jane Does 1 and 2 that he felt the school was "targeting" him and that he hated Assistant Principal McCracken in particular; he used profanities towards her and

even wished that she would have been fired.

53. During Jane Doe 1's senior year, Defendant Allen continued to entertain female students, including Jane Does 1 and 2, in his office with the door closed, and Defendants School Administrators, teachers, coaches and other staff made no attempt to assure the safety of Jane Does 1 and 2, among other female students. Defendant Allen also continued to pull female students, including Jane Does 1 and 2, out of class and have them sit in his office, with the door closed. On numerous occasions, the School Resource Officer found Defendant Allen with female students, including but not limited to Jane Does 1 and 2, in his office when the resource officer was closing up the school. The Resource Officer did nothing to assure that such female students, including but not limited to Jane Does 1 and 2, were safe.

54. As a direct and proximate result of the acts and omissions of the Defendants, Jane Doe 1 has suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Jane Doe 1 experienced in fearing going to school and being forced to interact with Defendant Allen.

### Jane Doe 2

55. Plaintiff Jane Doe 2 was a student at Northside in Roanoke County, Virginia, from August 2017 through May 2021.

56. Jane Doe 2 was similarly subjected to sexual harassment, grooming, abuse, and unwanted touching by Defendant Allen.

57. When Jane Doe 2 became a freshman student at Northside High School, Defendant Allen began grooming her, starting with breakfast and other meals in his office. Defendant Allen gave her rides, helped Jane Doe 2 with math, and initiated very personal conversations. After

Jane Doe 1 graduated from Northside at the end of the 2019 school year, the grooming of

Jane Doe 2 by Defendant Allen escalated into sexual harassment, abuse, and unwanted

touching, worsening in the summer of 2019, at the beginning of Jane Doe 2's junior year.

58. Defendant Allen would frequently hug Jane Doe 2 for prolonged periods of time. Defendant

Allen refused to let go during the hugs, pressing his body against Jane Doe 2's breasts, groin,

and private areas. Jane Doe 2 could feel Defendant Allen's erect penis during these

interactions.

59. As he did with Jane Doe 1, Defendant Allen pulled Jane Doe 2's class schedule and called

her out of class. Defendant Allen called Jane Doe 2's teachers and said he needed to see Jane

Doe 2. None of the teachers questioned these requests or prevented Jane Doe 2 from leaving

class, study hall, or yearbook to be alone with Defendant Allen in his office, which was after

the half-door was installed on his office.

60. Defendant Allen commented on Jane Doe 2's clothes when they were alone in his office,

specifically remarking on her shirts and jeans as being tight and making other inappropriate

comments regarding her appearance. He even asked her to send him pictures of her in her

underwear and in a bikini in 2019 and 2020.

61. Defendant Allen touched Jane Doe 2's hands and hair against her will. He played with the

hairbands that Jane Doe 2 kept on her wrists and insisted that Jane Doe 2 give him one of her

hairbands so he could have something of hers.

62. Defendant Allen gave Jane Doe 2 rides home. Sometimes they would go out to eat.

Defendant Allen would put his hand on Jane Doe 2's thigh, starting on the outside, then

moving his hand to the inside of her leg.

63. Defendant Allen questioned Jane Doe 2 about her sex life. He talked about female students

and teachers with whom he wanted to have sex.

64. As with Jane Doe 1, Defendant Allen would give Jane Doe 2 presents, such as hoodies, stuffed animals, and gift cards.

65. Defendant Allen would make comments on Jane Doe 2's body, such as calling her "cute," "sexy," "hot," and "curvy."

66. Defendant Allen would get angry with Jane Doe 2 if she mentioned a boy, and stop talking to Jane Doe 2 that day, requiring Jane Doe 2 to apologize.

67. Defendant Allen said he dreamed about and wanted to kiss Jane Doe 2, and also discussed other sexual things he wanted to do with her; for instance, Defendant Allen said that he "wanted to tie her hands and feet to a bed, spread her legs and have sex with her," or words to similar effect, and talk about the positions he would want Jane Doe 2 in.

68. Defendant Allen would also compare Jane Doe 2 to her friends in a sexual manner; for instance, he would state that one friend would give the best oral sex, another was the most sexual, while Jane Doe 2 would be "flexible and have a lot of sexual stamina."

69. Defendant Allen would tell Jane Doe 2 that he was aroused, and then hug her, pressing his erect penis into her groin and private areas.

70. Defendant Allen would tell Jane Doe 2 that he had sexual feelings for her but threatened her by saying that if she disclosed his comments, he would get into trouble, be mad at her, and their "friendship" would be ruined.

71. As he did with Jane Doe 1, Defendant Allen communicated regularly with Jane Doe 2 after school hours and on the weekends. He communicated via text messages, cell phone calls, and Snapchat, using the username "beehumbled." The calls were long, over an hour and a half at times, and Defendant Allen said raunchy, suggestive, and sexually explicit things to Jane Doe

2. In 2019 alone, Defendant Allen spoke with Jane Doe 2 over fifty times over the phone, totaling 1,308 minutes of talking time.

72. Defendant Allen had saved Jane Doe 2's contact information in his phone as "Boooo," which is common shorthand for one's girlfriend or boyfriend, suggesting that Defendant Allen viewed Jane Doe 2 in an intimate manner.

73. Defendant Allen would also come to Jane Doe 2's house after school hours and in these in-person interactions would say raunchy, suggestive, and sexually explicit things to Jane Doe 2 as well.

74. Defendant Allen's stalking and abusive behaviors became so extreme that Jane Doe 2 told her parents about them in the fall of 2020, her senior year. At that time, Jane Doe 2 had made efforts to try and cut Defendant Allen out of her life. Defendant Allen was very angry, and, just as he did with Jane Doe 1, continually accessed Jane Doe 2's computer, abusing his power as IT Specialist, to intentionally cause a malfunction so that Jane Doe 2 would be forced to come to his office for computer repair. Defendant Allen would also abuse his power as IT Specialist to read Jane Doe 2's personal messages on her laptop computer.

75. At or about this same time, Jane Doe 2 unfriended Defendant Allen on Snapchat. Defendant Allen responded by calling Jane Doe 2 into his office and warning her that if she discontinued this "friendship," he would not be her "friend" anymore, or help her with her computer, or give her rides.

76. In the midst of the COVID-19 epidemic, Jane Doe 2 feared participating in any virtual school classes, as she was worried that Defendant Allen would interfere and contact her that way. On multiple occasions, Defendant Allen called Jane Doe 2 and told her what was going on in her Zoom meetings, indicating he was observing them and her.

77. After Jane Doe 2 told her parents of Defendant Allen's abusive, harassing, and grooming behaviors in the Fall of 2020, Jane Doe 1 and 2's father met with Assistant Principal Christopher Morris in November 2020 to address the issue. Jane Doe 1 and 2's father informed Assistant Principal Morris of Defendant Allen's abusive, harassing, and grooming behaviors towards Jane Doe 2, including but not limited to comments regarding Jane Doe 2's body and his taking control of her school-issued laptop computer to inappropriately contact and stalk her.

78. Assistant Principal Morris seemed concerned and offered to help Jane Doe 2 with her computer, but only recommended that Jane Doe 2 take her laptop to the front desk, instead of Allen, if she had any computer issues. On her own, Jane Doe 2 modified her class schedule in an effort to avoid passing by Defendant Allen's office. However, Assistant Principal Morris ultimately took no action in response to the information provided to him by Jane Doe 1 and 2's father. At the end of Jane Doe 2's senior year, when Jane Doe 2 went in to return her laptop, Assistant Principal Morris stated he did not even remember his conversation with Jane Doe 2 and her father.

79. After meeting Assistant Principal Morris, Principal Jill Green called Jane Doe 1 and 2's father and told Jane Doe 1 and 2's father not to worry about Defendant Allen, implying that Northside would finally take action against Defendant Allen. But, just like Assistant Principal Morris, Principal Green took no action in response to the information provided by the Jane Doe 1 and 2's father.

80. As a direct and proximate result of the acts and omissions of the Defendants, Jane Doe 2 has suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Jane

Doe 2 experienced in fearing going to school and being forced to interact with Defendant Allen. In addition, Jane Doe 2 has sought and received counseling related to the abuse Defendant Allen inflicted upon her, and which Defendant School Board and Defendants School Administrators allowed to happen, and consequently took prescribed anti-depressants, including at times Prozac and Lexapro, and presently Wellbutrin.

## Jane Doe 3

81. Plaintiff Jane Doe 3 was a student at Northside in Roanoke County, Virginia, from August 2015 through May 2019.

82. Jane Doe 3 first met Defendant Allen during the Fall semester of her freshman year at Northside. Jane Doe 3's school-issued laptop computer had been damaged, and she took it to Defendant Allen for repairs, which Defendant Allen claimed would cost $500.00 to $600.00.

83. Shortly thereafter, as part of his efforts to emotionally manipulate and groom Jane Doe 3, Defendant Allen called Jane Doe 3 to his office for her to pick up the laptop, and claimed that he went days without sleeping in order to repair her laptop, and that he convinced the school administration to not charge Jane Doe 3 for the damage; Defendant Allen then told Jane Doe 3 that he owed her "big time."

84. From that point on, Defendant Allen engaged in inappropriate behavior with Jane Doe 3 similar to his behavior with Jane Does 1 and 2.

85. Defendant Allen presented himself as, and Jane Doe 3 considered him to be, a safe space, with whom vulnerable girls such as Jane Doe 3 could confide, much like an older brother. Thus, Jane Doe 3 would often confide in Defendant Allen things she would not even talk with counselors about. This was part of Defendant Allen's method of grooming Jane Doe 3, among other young female students at Northside, for sexual abuse.

86. As with Jane Does 1 and 2, Defendant Allen would abuse his power as IT Specialist to remotely control Jane Doe 3's computer, causing the computer to malfunction, so that she would have to go see him, since he was the IT Specialist. As the IT Specialist, he had the ability to access her computer, and he used this ability to force Jane Doe 3 to come to his private office where he continued to groom her for sexual abuse.

87. When Jane Doe 3 would visit Defendant Allen for these computer-related issues, Defendant Allen would not work on her laptop straight away, but invited Jane Doe 3 to sit down. He would tell Jane Doe 3 that since she could not finish her work without her laptop anyway, she should stay in his office. Jane Doe 3 would often be in Defendant Allen's office for entire class periods, but he would never let Jane Doe 3 look at the laptop he was supposedly fixing.

88. Jane Doe 3 spent much of her time in study hall in the library. Defendant Allen would frequently enter the library, which connected to his office via a passageway, and bother Jane Doe 3, attempting to get her to come to his office. Northside's librarian would tell Defendant Allen to leave Jane Doe 3 alone; however, Northside failed to reprimand Defendant Allen or protect their female students, including Jane Does 1, 2, 3, 4, and 5, from Defendant Allen's predatory grooming behaviors and grooming, sexual harassment, and sexual abuse.

89. In March 2016, when Jane Doe 3 was still a freshman and only 15 years old, Defendant Allen added Jane Doe 3 as a Facebook "friend." While Defendant Allen and Jane Doe 3 did not interact via Facebook beyond that, Defendant Allen would often make comments to Jane Doe 3 about her Facebook posts and photos, indicating that he was following her online activity.

90. Between Jane Doe 3's freshman year and the first semester of her junior year, Defendant Allen would engage Jane Doe 3 in inappropriate conversations. For example, Defendant

20

Allen would question Jane Doe 3 about her family life and her relationships (sexual and otherwise). Defendant Allen would also ask whether Jane Doe 3 was a virgin, whether she had viewed pornography, and if she had ever seen a penis. If Jane Doe 3 refused to answer these questions, Defendant Allen would become angry, claiming that he was "just trying to keep her safe."

91. Defendant Allen also made inappropriate comments about Jane Doe 3's appearance. For instance, he would call her pretty and say things such as "you're filling out nicely," "I hope you're wearing pants with that," and "damn you look fine today."

92. However, if Jane Doe 3 discussed liking someone romantically or dating anyone else, Defendant Allen would become upset. When Jane Doe 3 first started seriously dating a boyfriend, Defendant Allen would more frequently ask Jane Doe 3 questions of a sexual nature, and if he passed by Jane Doe 3 and her boyfriend kissing, he would stop and stare.

93. As with Jane Does 1 and 2, Defendant Allen would offer Jane Doe 3 rides outside of school. However, Jane Doe 3 refused such invitations, which upset Defendant Allen.

94. Defendant Allen's wholly inappropriate behavior escalated into physical touching. Between Jane Doe 3's freshman year and the first semester of her junior year, Defendant Allen would rub Jane Doe 3's lower back, kiss the top of her head, and touch her breasts. These inappropriate touchings happened consistently throughout this period of Jane Doe 3's time at Northside, occurring once every few weeks.

95. Jane Doe 3's frequent interactions with Defendant Allen, and concurrent absences from class, did not go unnoticed by Northside's administration and staff, including Jane Doe 3's teachers. When teachers asked why she was in Defendant Allen's office for so long, Jane Doe 3 would tell them that Defendant wanted her to have a "brain break"—Northside

teachers accepted this explanation without question and did nothing to limit Jane Doe 3's clearly inappropriate interactions with Defendant Allen.

96. Jane Doe 3 was aware of the unenforced policy discussed in paragraphs 50–52, *supra*. However, Northside administration never explained to any students, including Jane Doe 3, about the reasons for the open-door policy and the "line" students were not supposed to cross. Moreover, even after this policy was enacted, Jane Doe 3 observed that it was never enforced, as the door to Defendant Allen's would often remain closed even after this policy was enacted.

97. Around midway through Jane Doe 3's junior year, Defendant Allen asked for Jane Doe 3's cell phone number. Jane Doe 3 refused to give it to Defendant Allen.

98. From that point on, Jane Doe 3's school-issued laptop computer no longer suffered from the technical issues discussed above. Additionally, Defendant Allen began to ignore Jane Doe 3, and he would no longer keep Jane Doe 3 in his office for long periods of time.

99. Although Defendant Allen's inappropriate and predatory interest in Jane Doe 3 apparently waned, Jane Doe 3 continued to observe Defendant Allen inviting female students into his office, with the doors closed, sometimes for hours at a time.

100.    As a direct and proximate result of the acts and omissions of the Defendants, Jane Doe 3 has suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Jane Doe 3 experienced in fearing going to school and being forced to interact with Defendant Allen.

### Jane Doe 4

101.    Plaintiff Jane Doe 4 was a student at Northside in Roanoke County, Virginia, from

August 2015 through May 2019.

102.    Jane Doe 4 met Defendant Allen during her freshman year at Northside when she picked

up her laptop from the library at laptop pick-up that fall.

103.    When Jane Doe 4 first entered Defendant Allen's office, Defendant Allen kept her there

for about three hours. At that time, Jane Doe 4 had been in the foster care system for around

one year and did not know anyone at Northside, making her particularly vulnerable.

Defendant Allen took advantage of that fact to manipulate and groom Jane Doe 4 for sexual

abuse.

104.    From that point on, Defendant Allen engaged in inappropriate behavior with Jane Doe 4

similar to his behavior with Jane Does 1, 2, and 3, which lasted and remained consistent

throughout Jane Doe 4's high school career.

105.    Defendant Allen presented himself as, and Jane Doe 4 considered him to be, a safe

space, with whom vulnerable girls such as Jane Doe 4 could confide, much like an older

brother. Thus, Jane Doe 4 considered Defendant Allen a mentor, and she would often confide

in Defendant Allen things she would not even talk with counselors about. This was part of

Defendant Allen's method of grooming Jane Doe 4, among other young female students at

Northside, for sexual abuse.

106.    As with Jane Does 1, 2, and 3, Defendant Allen would abuse his power as IT Specialist to

remotely control Jane Doe 4's computer, causing the computer to malfunction, so that she

would have to go see him, since he was the IT Specialist. When Defendant Allen did this,

Jane Doe 4 observed him remotely controlling her computer's cursor. As the IT Specialist, he

had the ability to access her computer, and he used this ability to force Jane Doe 4 to come to

his private office where he continued to groom her for sexual abuse. Further, when Jane Doe

4 was in the library, Defendant Allen pulled her out of the library and brought her into his

office, which was adjacent to the library. Jane Doe 4 would be alone in Defendant Allen's

office, with the door closed, multiple times per week.

107.    When Jane Doe 4 was in his office, Defendant Allen would tell her to stand behind the

door to the office, in an attempt to prevent passersby from seeing them. Defendant Allen told

other girls the same thing.

108.    Defendant Allen would also abuse his power as IT Specialist to remotely access the

webcam on Jane Doe 4's computer, giving him the ability to watch Jane Doe 4 as she used

her computer for classes and schoolwork. Eventually, Jane Doe 4 covered up the webcam

with tape to prevent such peeping.

109.    Defendant Allen would spend a lot of time alone with Jane Doe 4 in his office. As he did

with Jane Does 1, 2, and 3, Defendant Allen engaged in inappropriate conversation with Jane

Doe 4, including comments on her outfits, looks, and dating. Defendant Allen would become

upset if Jane Doe 4 was dating or attracted to other people.

110.     As he did with Jane Does 1, 2, and 3, Defendant Allen had inappropriate physical

contact with Jane Doe 4, beginning in her sophomore year. He would touch her shoulders

and half-hug her for four to five seconds at a time; during these embraces, Defendant Allen'

arm would be around her waist, and his body would be up against Jane Doe 4's breasts and

buttocks.

111.    Defendant Allen repeatedly asked Jane Doe 4 to give him her social media information.

However, Jane Doe 4 refused.

112.    Jane Doe 4 expressed her discomfort and concerns about Defendant Allen to Northside's

administration, including Defendant McKracken and Defendant Morris, on several occasions

as a junior and senior at Northside.

113.    Jane Doe 4 saw Defendant McKracken to complain about Defendant Allen keeping his door closed, including after Northside purported to implement the unenforced policy discussed in paragraphs 50–52, *supra*. Defendant McKracken would type on her computer as Jane Doe 4 met with her, indicating she was taking notes, and would say not to worry about it and that the school would take care of it. However, Northside did nothing and Defendant Allen's grooming and sexual abuse of female students continued unabated.

114.    Jane Doe 4 made similar complaints about Defendant Allen to Defendant Morris, who would call her down to his office when she complained but ultimately brush her off. Like Defendant McKracken, Defendant Morris would say not to worry about it and that the school would take care of it. However, Northside took no action, and Defendant Allen's grooming and sexual abuse of female students continued unabated.

115.    Defendant Allen's inappropriate behavior with respect to Jane Doe 4, as described above, continued up to Jane Doe 4's graduation from Northside in May 2019.

116.    As a direct and proximate result of the acts and omissions of the Defendants, Jane Doe 4 has suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Jane Doe 4 experienced in fearing going to school and being forced to interact with Defendant Allen.

### Jane Doe 5

117.    Plaintiff Jane Doe 5 was a student at Northside in Roanoke County, Virginia, from August 2018 through December 2019.

118.    Jane Doe 5 first met Defendant Allen when she was in middle school, in eighth grade,

through family connections.

119.    When Jane Doe 5 enrolled in Northside as a freshman, her interactions with Defendant

Allen became more frequent.

120.    In her freshman and sophomore years at Northside, Defendant Allen engaged in

inappropriate behavior with Jane Doe 5 similar to his behavior with Jane Does 1, 2, 3, and 4.

121.    While Jane Doe 5 was a student at Northside, Jane Doe 5 had a troubled home life and

thus looked up to Defendant Allen as a trusted and stable adult; in one instance, Jane Doe 5,

together with Jane Doe 1 and another female student at Northside, wrote "Coach Allen" on

their arms in marker and posed for and took a picture with Defendant Allen.

122.    Defendant Allen, in turn, exploited this vulnerability to manipulate and groom Jane Doe

5 for sexual harassment and abuse.

123.    Defendant Allen gave Jane Doe 5 his personal contact information, including his

Instagram, Snapchat, Facebook, email, and cell phone number. Defendant Allen told Jane

Doe 5 not to tell anyone because he "could get in trouble."

124.    While Jane Doe 5 was a student at Northside, Defendant Allen would communicate with

Jane Doe 5 via Snapchat and text message. Defendant Allen would also view what Jane Doe

5 had posted on social media and talk to her about it in person.

125.    While Jane Doe 5 was a student at Northside, Defendant Allen use his authority as IT

Specialist to pull Jane Doe 5 out of class to talk with her. For instance, while in class, Jane

Doe 5 would be called into Defendant Allen's office regarding some issue with her

computer. This was merely a pretext, however, as when Jane Doe 5 would arrive in

Defendant Allen's office, Defendant Allen would tell her he just wanted to say "hi," and the

two would begin to talk, alone in his office.

126.    While Jane Doe 5 was a student at Northside, Defendant Allen engaged Jane Doe 5 in numerous inappropriate topics of conversation. Such topics included, but were not limited to, Jane Doe 5's home and personal life, her intimate relationships, the intimate relationships of her classmates, and sex. For instance, Defendant Allen would ask Jane Doe 5 what kind of things she did with her boyfriend, whether they had sex yet, what positions they used, and other things of that highly inappropriate nature.

127.    Conversely, if Jane Doe 5 made a joke about Defendant Allen, or Defendant Allen became upset with her for other reasons, Defendant Allen's attitude would become colder, and he would begin ignoring Jane Doe 5.

128.    While Jane Doe 5 was a student at Northside, Defendant Allen would personally coach Jane Doe 5 in soccer. He would practice with her not only at the school's soccer field, but would drive her to Fallon Park, which was over seven miles away. Additionally, Defendant Allen would drive Jane Doe 5 to and from soccer practice, school, and her home.

129.    After soccer practice, Defendant Allen would frequently take Jane Doe 5 out to get ice cream at Bruster's, just himself and Jane Doe 5. During one such outing, Defendant Allen warned Jane Doe 5 to make sure she did not tell anyone about it. During these outings, Defendant Allen engaged Jane Doe 5 in the same inappropriate conversation topics discussed above.

130.    While Jane Doe 5 was a student at Northside, Defendant Allen frequently hugged Jane Doe 5 in an overlong and inappropriate manner. During these embraces, Defendant Allen's arms would be fully wrapped around Jane Doe 5, and his body would be pressed against Jane Doe 5's breasts.

131.    Later in the first semester of her sophomore year at Northside, Jane Doe 5 tried to

distance herself from Defendant Allen. In response, Defendant Allen became very passive aggressive towards her. This upset and confused Jane Doe 5, because Defendant Allen had groomed her to feel that she needed to remain on his good side for success in high school.

132.    In December of 2019, midway through her sophomore year, Jane Doe 5 transferred from Northside to Salem High School. Fortunately, transferring high schools prevented Defendant Allen from continuing his grooming, sexual harassment, and other inappropriate conduct towards Jane Doe 5.

133.    As a direct and proximate result of the acts and omissions of the Defendants, Jane Doe 5 has suffered inappropriate and unwelcome touchings, anxiety, extreme distress, loss of enjoyment of life, loss of educational opportunities, and other damages. Such damages include the stress Jane Doe 5 experienced in fearing going to school and being forced to interact with Defendant Allen.

## Facts Common to All Plaintiffs

134.    Defendants School Administrators, teachers, coaches, and other staff were aware of Defendant Allen's grooming, sexual harassment, and sexual abuse of female students prior to the information provided by Jane Doe 4 and Jane Doe 1 and 2's father. There were unmistakable signs that something was amiss for years, since the Fall of 2015, when Jane Does 1, 3, and 4 began attending Northside and having interactions with Defendant Allen. Defendants School Administrators, teachers, coaches, and other staff were aware that Defendant Allen spent inordinate amounts of time with female students behind closed doors in his office, and that he developed inappropriate relationships with the female students. Yet, for years, nothing was done to stop Defendant Allen and prevent the grooming, sexual harassment, and sexual abuse of female students, including Jane Does 1, 2, 3, 4, and 5.

135.    Defendants School Administrators made no effort to investigate, no effort to restrict Defendant Allen's one-on-one interactions with students, no effort to curtail Defendant Allen from inviting students into his office, and no effort to protect the welfare of the students entrusted to their control.

136.    All of Defendant Allen's behaviors with female students, including Jane Does 1, 2, 3, 4, and 5, clearly and obviously constituted improper grooming behaviors, and were or should have been recognized by Defendant School Board and its employees, administrators, teachers, coaches, and staff, including but not limited to Defendants School Administrators, as improper. Nevertheless, the Defendant School Board and Defendants School Administrators took no action to effectively stop Defendant Allen and protect the female students from his grooming, sexual harassment, and sexual abuse.

137.    Defendant School Board and Defendants School Administrators allowed Defendant Allen to have unrestricted and unsupervised access to female students at Northside, including Jane Does 1, 2, 3, 4, and 5, often for long periods of time. Defendant School Board and Defendants School Administrators allowed Defendant Allen to be alone with female students, including Plaintiffs, in his office behind closed doors, and outside of school hours, on numerous occasions over the course of years.

138.    Defendant Allen's behavior was well known throughout Northside and by its faculty and staff, including Defendants School Administrators.

139.    Defendants School Administrators (among other school officials) and Defendant School Board had notice that Defendant Allen was spending an inappropriate amount of time with multiple female students, including behind closed doors.

140.    Defendant School Board and Defendants School Administrators turned a blind eye to

Defendant Allen's blatant sexual misconduct towards Jane Does 1, 2, 3, 4, and 5 and other female students. Defendant School Board and Defendants School Administrators failed to investigate reports of Defendant Allen's inappropriate relationships with female students at Northside, failed to curtail Defendant Allen's access to female students, and failed to prevent him from secluding female students in his office.

141.    Defendant School Board and Defendants School Administrators and other school officials had knowledge of Defendant Allen's improper behavior and abuses, but failed to address them, thereby enabling Defendant Allen to continue his pattern of sexual harassment, grooming, and abuse of female students, including Plaintiffs.

142.    Defendant School Board and Defendants School Administrators made Defendant Allen's longstanding sexual abuse of female students, including Plaintiffs, possible by their lack of oversight and supervision and their failure to act upon their knowledge of his improper and/or abusive behaviors.

143.    The acts of Defendant School Board and Defendants School Administrators as set forth above were willful, wanton, malicious, and oppressive, thus entitling Plaintiffs to awards of punitive damages.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF TITLE IX

### (Against Defendant Roanoke County School Board)

144.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

145.    Roanoke County School Board is an "educational institution" within the meaning of 20 U.S.C. § 1681 because it is a public education program which receives financial assistance

from the United States federal government.

146.    Plaintiffs were students of Defendant Roanoke County School Board and belong to a protected group of female students under Title IX.

147.    Plaintiffs were subjected to grooming, sexual harassment, and sexual abuse based on their gender.

148.    Defendant Allen's grooming, sexual harassment, and sexual abuse of Plaintiffs was sufficiently severe and pervasive to create a hostile and abusive environment in their studies and other educational endeavors.

149.    Defendant School Board had notice of Defendant Allen's grooming, sexual harassment, and sexual abuse against Plaintiffs and other female students including based on reports from concerned parents, school board employees and staff, the School Resource Officer, administrators, coaches, and teachers.

150.    Despite actual notice of Defendant Allen's misconduct, Defendant School Board was deliberately indifferent to Defendant Allen's misconduct. By its actions and inactions, Defendant School Board acted with deliberate indifference toward the rights of Plaintiffs and other female students to a safe and secure education environment, thus materially impairing Plaintiffs' ability to pursue their education at Northside, in violation of the requirements of Title IX.

151.    Defendant School Board, by its actions and failures to act, created a climate whereby grooming, sexual harassment, and sexual abuse was tolerated, thus encouraging repeated grooming, sexual harassment, and sexual abuse and proximately causing injury to the Plaintiffs.

152.    Defendant School Board, through its agents, had actual knowledge of the grooming,

sexual harassment, and sexual abuse Defendant Allen perpetrated against Plaintiffs and other

Northside female students both on and off school property. Defendant School Board

permitted Defendant Allen to spend unsupervised time in his office with female students,

behind closed doors, and permitted Defendant Allen to transport female students,

unchaperoned, to school activities, such as sports practices and games.

153.    Defendants School Administrators, and other School Board agents, were appropriate

persons to rectify Defendant Allen's grooming, harassing, abusive, and predatory conduct.

154.    Defendant School Board, through its agents, had the authority and ability to address the

discrimination, to investigate and take meaningful corrective action to end or prevent the

grooming, sexual harassment, and sexual abuse, but failed to do so. Defendant School Board

failed to adequately respond and displayed deliberate indifference to the discrimination and

harassment against Plaintiffs.

155.    Plaintiffs suffered repeated school employee-on-student grooming, sexual harassment,

and sexual abuse, which is considered sex discrimination prohibited by Title IX. The

grooming, sexual harassment, and sexual abuse of Plaintiffs by Defendant Allen was severe,

pervasive, and objectively offensive, and effectively barred Plaintiffs' access to educational

opportunities and benefits.

156.    As a direct and proximate result of Defendant School Board's deliberate indifference,

Plaintiffs have suffered, and will continue to suffer, anxiety, emotional distress, pain,

suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities,

and other damages.

## COUNT TWO

## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION

### (Against All Defendants)

157.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

158.    The equal protection clause of the Fourteenth Amendment guarantees Plaintiffs the right to equal protection of the laws, including the right to be free from grooming, sexual harassment, and sexual abuse in an educational setting.

159.    Defendants Allen and School Board Administrators are persons, and their actions were under color of state law within the meaning of 42 U.S.C. § 1983.

160.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

161.    42 U.S.C. § 1983 provides a cause of action for the violation under color of law of equal protection rights protected by the Fourteenth Amendment.

162.    Plaintiffs were subjected to discriminatory treatment based on gender in violation of the equal protection clause of the Fourteenth Amendment when they were sexually harassed and abused by Defendant Allen, a male teacher, at Northside.

163.    Similarly situated male students were not subject to such harassment and abuse.

164.    Defendants denied Plaintiffs their right to equal protection of the laws when they discriminated against Plaintiffs by subjecting them to grooming, sexual harassment, and sexual abuse by Defendant Allen, a male teacher at Northside, and by responding so inadequately to their actual knowledge of the sexual grooming, sexual harassment, and sexual abuse of Plaintiffs as to show deliberate indifference to or tacit authorization of such

33

sexual grooming, sexual harassment, and sexual abuse. These actions are in violation of Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

165. Defendants unlawfully discriminated against Plaintiffs by subjecting them to grooming, sexual harassment, and sexual abuse, including when male students were not subjected to such grooming, sexual harassment, and sexual abuse, in violation of 42 U.S.C. § 1983 and Plaintiffs' rights under the equal protection clause of the Fourteenth Amendment.

166. Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

167. Defendant School Board also implemented a policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

168. Defendants have acted maliciously and intentionally.

169. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

## COUNT THREE

## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

### (Against All Defendants)

170.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

171.    Defendants Allen and School Board Administrators are persons, and their actions were
        under color of state law within the meaning of 42 U.S.C. § 1983.

172.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the
        framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611
        (1978).

173.    Plaintiffs have a substantive due process right under the due process clause of the
        Fourteenth Amendment to be free from invasion of bodily integrity.

174.    42 U.S.C. § 1983 provides a cause of action for the violation under color of law of
        substantive due process rights protected by the due process clause of the Fourteenth
        Amendment.

175.    Defendants violated Plaintiffs' substantive due process right to be free from invasion of
        bodily integrity when Defendant Allen sexually harassed and abused Plaintiffs, thereby
        invading their bodily integrity. All Defendants were aware of Defendant Allen's invasion of
        Plaintiffs' bodily integrity, but failed to intervene or prevent such invasion. These actions are
        in violation of Plaintiffs' right to be free from invasion of bodily integrity under the due
        process clause of the laws under the Fourteenth Amendment to the United States
        Constitution.

176.    Defendants violated Plaintiffs' substantive due process right to be free from invasion of
        bodily integrity by subjecting them to grooming, sexual harassment, and sexual abuse by

Defendant Allen, and failing to intervene or prevent such invasion, in violation of 42 U.S.C. § 1983 and Plaintiffs' rights under the substantive due process clause of the Fourteenth Amendment.

177.   Defendants acted under pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

178.   Defendant School Board also implemented a policy and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

179.   Defendants have acted maliciously and intentionally.

180.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

**COUNT FOUR**

**42 U.S.C. § 1983 - FAILURE TO TRAIN**

**(Against Defendant School Board and Defendants School Administrators)**

181.   Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

182.   Defendants School Board Administrators are persons, and their actions were under color

of state law within the meaning of 42 U.S.C. § 1983.

183.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

184.    As described above, Defendant Lorstan Allen violated the Plaintiffs' rights to equal protection of the laws and substantive due process under the Fourteenth Amendment of the United States Constitution when he subjected the Plaintiffs to sexual harassment, grooming, abuse, assault and battery, which is a known risk in the educational setting and constitutes a clear violation of students' constitutional rights.

185.    At all relevant times, Defendants School Board and School Administrators were policy makers and administrators who had a duty to train—and failed to train—administrators, teachers, coaches, and School Resource Officers regarding male employee sexual harassment, grooming, and abuse of female students. Defendants School Board and School Administrators had a duty to train—and failed to train—administrators, teachers, coaches and School Resource Officers in identifying, investigating, reporting, and stopping sexual harassment, grooming and abuse of female students by male employees of Defendant School Board, like the abuse of Plaintiffs by Defendant Lorstan Allen. Defendants School Board and School Administrators failed to train teachers and employees/agents on how to spot, investigate, and address sexual harassment, grooming, abuse, and assault. The failure to do so amounted to deliberate indifference.

186.    Defendants School Board and School Administrators acted in a deliberately indifferent manner in failing to properly train and supervise their administrators, teachers, coaches, and the School Resource Officer regarding male employee sexual harassment, grooming, and

abuse of female students, and failing to train their agents in identifying, investigating, reporting, and stopping sexual harassment, grooming, and abuse of female students by male employees of Defendant School Board, like the abuse of Plaintiffs by Defendant Lorstan Allen.

187.    Defendants School Board and School Administrators continued to adhere to an approach that they knew or should have known had failed to prevent tortious conduct by Defendant Allen, thus establishing their conscious disregard for the consequences of their actions, and a conscious disregard for the rights of the Plaintiffs.

188.    Defendants School Board and School Administrators sanctioned, tolerated, and ratified Defendant Allen's unconstitutional sexual discrimination and invasion of the right to bodily integrity when they became aware of Defendant Allen's unconstitutional actions, but failed to effectively intervene and stop Defendant Allen's actions.

189.    By failing to effectively discipline or reprimand Defendant Allen for his violation of Plaintiffs' constitutional rights, Defendants School Board and School Administrators approved of and/or ratified Defendant Allen's violation of Plaintiffs' constitutional rights.

190.    Defendants School Board's and School Administrators' failure to train their administrators, teachers, staff, coaches, and School Resource Officers was in reckless and callous indifference to Plaintiffs' federally protected rights.

191.    As a direct and proximate result of Defendants School Board's and School Administrators' failure to train, and subsequent sanctioning, toleration, and ratification of Defendant Allen's unconstitutional conduct, Plaintiffs were sexually harassed, abused, assaulted, and battered, thereby depriving Plaintiffs of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of constitutional

rights enforceable under 42 U.S.C. § 1983.

192.    Defendant School Board implemented a policy and/or custom of failing to train their

administrators, teachers, staff, coaches, and School Resource Officers, as well as a policy

and/or custom of allowing faculty such as Defendant Allen to meet with students such as

Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant

Allen's inappropriate conduct with students, maintained such policy and/or custom by

continuing to permit Defendant Allen to meet with students such as Plaintiffs with office

doors closed and outside of class time; such policy and/or custom proximately caused the

deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the

United States Constitution.

193.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will

continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain,

suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities

and other damages.

## COUNT FIVE

## 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

### (Against Defendant School Board and Defendants School Administrators)

194.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

195.    Defendants School Board Administrators are persons, and their actions were under color

of state law within the meaning of 42 U.S.C. § 1983.

196.    Defendant School Board is subject to liability under 42 U.S.C. § 1983 pursuant to the

framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611

(1978).

197.    As described above, Defendant Lorstan Allen violated the Plaintiffs' rights to equal
protection of the laws and substantive due process under the Fourteenth Amendment to the
United States Constitution when he sexually harassed, groomed, abused, assaulted, and
battered Plaintiffs.

198.    At all relevant times, Defendant School Board and Defendants School Administrators had
a duty to supervise, and failed to supervise, Defendant Lorstan Allen. Defendant School
Board and Defendants School Administrators are responsible for the supervision and conduct
of the staff, teachers, and coaches employed at Northside. They are further responsible for
ensuring that staff, teachers, and coaches do not engage in sexual harassment, grooming,
abuse, assault and battery of female students. They had supervisory duties and
responsibilities with respect to their subordinate Defendant Allen and were responsible for
ensuring that Defendant Allen did not sexually harass, groom and abuse Plaintiffs.

199.    Defendant School Board and Defendants School Administrators were personally
involved in and responsible for the sexual harassment, grooming, abuse, assault and battery
experienced by Plaintiffs in that they were deliberately indifferent in supervising and training
Defendant Allen, who committed the wrongful acts described herein.

200.    Defendant School Board and Defendants School Administrators had actual knowledge, or
should have had actual knowledge if they had used reasonable care and diligence, that
Defendant Allen was engaged in conduct that posed a pervasive and unreasonable risk of
constitutional injuries to Plaintiffs.

201.    However, Defendant School Board's and Defendants School Administrators' response to
this knowledge of the danger Defendant Allen posed to Plaintiffs and other female students
was so inadequate as to show deliberate indifference to, or tacit authorization of, Defendant

Allen's sexual misconduct against Plaintiffs.

202.     Defendant School Board's and Defendants School Administrators' response to this
knowledge exhibited reckless and callous indifference to Plaintiffs' federally protected
rights.

203.     Defendant School Board and Defendants School Administrators failed to supervise,
monitor, or adequately investigate Defendant Allen's interactions with Plaintiffs and other
female students. Defendant School Board and Defendants School Administrators did not
monitor Defendant Allen's actions in his office or during any other school activities, failed to
take effective action to curtail Defendant Allen's unrestricted and unsupervised access to
Plaintiffs, and failed to adequately investigate Defendant Allen's known and inappropriate
interactions with Plaintiffs and other female students.

204.     Defendant School Board and Defendants School Administrators acted in a deliberately
indifferent manner in failing to properly supervise Defendant Allen in his interactions with
Plaintiffs and other female students.

205.     Defendant School Board and Defendants School Administrators sanctioned, tolerated,
and ratified Defendant Allen's unconstitutional sexual discrimination and invasion of the
right to bodily integrity when they became aware of, or should have become aware of,
Defendant Allen's unconstitutional actions, but failed to effectively intervene and stop
Defendant Allen's actions.

206.     Defendant School Board and Defendants School Administrators failed to effectively
discipline or reprimand Defendant Allen for his violations of Plaintiffs' constitutional rights.

207.     Defendant School Board's and Defendants School Administrators' failure to supervise
Defendant Allen was in reckless and callous indifference to Plaintiffs' federally protected

rights.

208.  The gross indifference by Defendant School Board and Defendants School
Administrators to the conduct of Defendant Allen, which included repeated instances of
inappropriate interactions with female students, including Plaintiffs, led to the violation of
Plaintiffs' constitutionally protected rights. The failure of Defendant School Board and
Defendants School Administrators to take effective corrective action after they learned, or
through the exercise of reasonable care of diligence should have learned, of misconduct by
Defendant Allen, and the failure to properly supervise Defendant Allen, led to these
violations.

209.  These actions by the Defendant School Board and Defendants School Administrators
were of a malicious and intentional nature and manifested a deliberate indifference to the
established constitutional rights of Plaintiffs.

210.  Defendant School Board and Defendants School Administrators acted under pretense and
color of state law. Defendants acted willfully, knowingly, and with the specific intent to
deprive Plaintiffs of their constitutional rights secured by the Fourteenth Amendment to the
United States Constitution.

211.  As a direct and proximate result of Defendant School Board's and Defendants School
Administrators' failure to properly supervise Defendant Allen, Plaintiffs were sexually
harassed, groomed, abused, assaulted and battered, thereby depriving Plaintiffs of the rights,
remedies, privileges and immunities guaranteed to every citizen of the United States, in
violation of rights enforceable under 42 U.S.C. § 1983.

212.  Defendant School Board also implemented a policy and/or custom of failing to train their
administrators, teachers, staff, coaches, and School Resource Officer, as well as a policy

and/or custom of allowing faculty such as Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time, and, upon learning of Defendant Allen's inappropriate conduct with students, maintained such policy and/or custom by continuing to permit Defendant Allen to meet with students such as Plaintiffs with office doors closed and outside of class time; such policy and/or custom proximately caused the deprivation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment to the United States Constitution.

213.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational opportunities and other damages.

**COUNT SIX**

**GROSS NEGLIGENCE**

**(Against Defendants School Administrators)**

214.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

215.    During all times material to the claims herein, the Defendants School Administrators' acts and omissions amounted to gross negligence, recklessness, and a willful and wanton disregard for the safety and wellbeing of Jane Does 1, 2, 3, 4, and 5. The acts and omissions of these Defendants were taken with conscious disregard of the consequences of their conduct. The reckless, willful and wanton acts of these Defendants include, but are not limited to, those set forth in the foregoing paragraphs.

216.    As a direct and proximate result of the gross negligence, recklessness, willfulness and wantonness of the Defendants School Administrators, Jane Does 1, 2, 3, 4, and 5 suffered

injuries and damages, including, but not limited to anxiety, emotional distress, pain,

suffering, loss of enjoyment of life, counseling expenses, and impaired educational

opportunities.

217.    Defendants School Administrators committed the grossly negligent actions and breaches

of duty as described herein in the course and scope of their employment and/or agency with

Defendant School Board.

218.    As a direct and proximate result of the Defendants' actions, Plaintiffs have suffered

improper touchings, anxiety, emotional distress, pain, suffering, loss of enjoyment of life,

counseling expenses, impaired educational opportunities and other damages.

219.    The acts of the Defendants as set forth above were wanton, malicious, oppressive,

shocking, outrageous, willful, intolerable and offend generally accepted standards of

decency, and as such, entitle Plaintiffs to an award of punitive damages.

## COUNT SEVEN

## ASSAULT AND BATTERY

### (Against Defendant Allen)

220.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

221.    Defendant Allen's inappropriate and unwanted touching of Plaintiffs constitutes assault

and battery in violation of Virginia's common law.

222.    Defendant Allen's actions caused harmful or offensive contact with Plaintiffs and created

in their mind a reasonable apprehension of an imminent battery.

223.    Plaintiffs neither consented to, nor excused, the inappropriate touching.

224.    Furthermore, Plaintiffs, as minors, could not consent to Defendant Allen's inappropriate

touching, which was of a sexual nature.

225.    The inappropriate touching of Plaintiffs was not justified.

226.    As a direct and proximate result of Defendant Allen's actions, Plaintiffs have suffered

and will continue to suffer inappropriate and unwanted touchings, anxiety, emotional

distress, pain, suffering, loss of enjoyment of life, counseling expenses, impaired educational

opportunities and other damages.

227.    At all times material hereto, Defendant Allen acted with actual malice toward Plaintiffs

or with reckless disregard of the protected rights of Plaintiffs so as to support an award of

punitive damages.

## COUNT EIGHT

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendant Allen and Defendants School Administrators)

228.    Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

229.    The following conduct by these Defendants amounted to the intentional infliction of

emotional distress: (a) Plaintiffs were sexually harassed, groomed, abused, assaulted and

battered by Defendant Allen while attending Northside; and (b) Defendant School Board and

School Administrators were aware, or should have been aware, of Defendant Allen's

predatory behaviors, but failed to intervene, failed to stop Defendant Allen from engaging in

these behaviors, failed to terminate Defendant Allen's employment, and failed to protect the

Plaintiffs from Defendant Allen's actions while they were students at Northside. In addition,

Defendant School Administrators implemented and continued the policy of allowing

Defendant Allen to have female students, including Plaintiffs, in his office with the door

closed, despite knowing or acting in reckless disregard of the substantial risk such policy

imposed on female students, including Plaintiffs.

230.    Such conduct was outrageous and intolerable and offended generally accepted standards

of decency and morality. These Defendants' acts and omissions caused Plaintiffs severe

emotional distress, for which they seek compensatory and punitive damages.

231.    Because of these Defendants' acts and omissions, Plaintiffs have suffered severe

emotional distress, including depression, insomnia, anger, fear, stress, lack of pleasure and

enjoyment in activities, interference with family relationships, loss of self-esteem and self-

confidence, humiliation, anxiety, impairment of educational opportunities, and other

damages.

232.    In addition, Jane Doe 2 has sought and received counseling related to the abuse

Defendant Allen inflicted upon her, and which Defendant School Board and Defendants

School Administrators allowed to happen, and consequently took prescribed anti-depressants,

including at times Prozac and Lexapro, and presently Wellbutrin.

233.    These Defendants' acts and omissions were intentional and amounted to extreme and

outrageous conduct, causing Plaintiffs to suffer emotional distress.

234.    Because of these Defendants' acts and omissions as set forth above, Plaintiffs have

suffered and will continue to suffer anxiety, emotional distress, pain, suffering, loss of

enjoyment of life, counseling expenses, impaired educational opportunities and other

damages.

WHEREFORE, Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, and Jane Doe

5 each request judgment against the Defendants, jointly and severally, as follows;

A. For Count One, against Defendant Roanoke County School Board, compensatory

damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

B. For Count Two:

1. Against Defendant Roanoke County School Board, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

2. Against each other Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

C. For Count Three:

1. Against Defendant Roanoke County School Board, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

2. Against each other Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

D. For Count Four:

1. Against Defendant Roanoke County School Board, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

2. Against each other Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

E. For Count Five:

1. Against Defendant Roanoke County School Board, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

2. Against each other Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

F. For Count Six, against each Defendant named compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

G. For Count Seven, against each Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

H. For Count Eight, against each Defendant named, jointly and severally, compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

I. For costs and attorneys' fees; and

J. For such further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5

By:    /s/ Carrol M. Ching
        Of Counsel

John P. Fishwick, Jr. (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

> /s/ Carrol M. Ching
> Carrol M. Ching (VSB #68031)
> Carrol.Ching@fishwickandassociates.com
> Fishwick & Associates PLC
> 30 Franklin Road SW, Suite 700
> Roanoke, Virginia 24011